## HINMAN *against* HINMAN.

Where *A.*, the undisputed owner of a tract of land, conveyed it, for a valuable consideration, to *B.*, who went into possession, claiming it as his own, but omitted, through mistake, to put his deed upon record ; after which *C.*, having notice of such conveyance, and also of such omission, with a view of acquiring a title in himself, purchased, at a discount, certain debts against *A.*, which he put in suit, in the names of the creditors, obtained judgments, and had the executions levied upon the land, as the property of *A.* ; and then, while *B.* was in possession, holding adversely, took deeds of release from such creditors ; it was held, that such deeds were void, by the statute against selling disputed titles, and because the purchase by *C.*, with notice of the previous conveyance to *B.*, was *mala fide.*

This was an action of ejectment, for a tract of land in the town of *Oxford ;* tried at *New-Haven, August* term, 1822, before *Peters* J. ; when the plaintiff obtained a verdict, and the defendant moved for a new trial, on the ground of a misdirection.

*N. Smith* and *J. L. Tomlinson*, in support of the motion.

*Staples*, contra.

HOSMER, Ch. J. The plaintiff brought an action of disseisin, to recover certain land lying in *Oxford ;* and under the plea of *no wrong or disseisin*, the sole point of controversy regarded the title. It was admitted, that the property in question was vested in one *Elihu Moss ;* and that as early as the 21st of *April*, 1804, he gave a deed of the land, lying partly in *Derby* and partly in *Oxford*, to *Elihu Peck ;* and on the 3rd of *April*, 1806, *Moss* executed another deed of a moiety of the premises to *Prescott* and *Slocum.* The former deed was duly recorded in *Derby*, and the latter in the same town, and afterwards, on the 22nd of *August*, 1822, in *Oxford.* The deed to *Peck* the judge rejected, as being inadmissible in evidence ;

but the one to *Prescott* and *Slocum* was admitted, with successive legal conveyances of the land to the defendant. The deeds from *Moss* not having been questioned, as being fraudulent, it must be assumed, that they were for valuable consideration. Although as against the grantor and his heirs, the defendant had acquired a legal title to the premises, yet, the deeds not having been recorded in *Oxford*, the title was defective in relation to the creditors of *Moss*. The defendant, however, and those from whom he derived his title, had entered upon the land in question, and possessed it adversely to the plaintiff, claiming to hold it as their own.

*Nicholas Beardslee* and *Beardslee* and *Wheeler* were the creditors of *Elihu Moss*. The debt of *Nicholas Beardslee* was purchased by one *Simeon Hinman*, and by him assigned to *Daniel Hinman*, and by the latter, to the plaintiff, before it was pursued to judgment ; and the debt of *Beardslee* and *Wheeler*, in like manner, was assigned by them to *Daniel Wheeler*, and by him to *John B. Hinman*. On both demands judgment was rendered, in *November*, 1817, by the procurement of the plaintiff, in the names of *Nicholas Beardslee* and *Beardslee* and *Wheeler* ; executions were issued, and, on the 10th of *March*, 1818, were duly levied on the land in question, at the plaintiff's expense, and by his direction. A deed of release was duly executed, by *Nicholas Beardslee* of the above-mentioned land, in *March*, 1818, to *Simeon Hinman*, and a similar deed was afterwards executed, by *Simeon Hinman* to the plaintiff. At the same time, *Beardslee* and *Wheeler* made and executed a like deed to the plaintiff, of the above-mentioned property ; and all the above-mentioned deeds of release were on the consideration, that the plaintiff, in equity, was the owner of the judgment debts. None of the grantors or grantees, at the execution of the said deeds, were in possession of the premises ; but, as before stated, the land was in the adverse occupancy of the defendant. It is an admitted fact, that when *Simeon Hinman* bought the debt of *Nicholas Beardslee*, he had knowledge of the defendant's title as beforementioned ; and it is claimed to have been proved, that the said *Simeon* and *Daniel Hinman* and the plaintiff purchased the aforesaid demands at a discount, with a view of acquiring a title to the premises ; and that they well knew of the existence of the conveyances under which the defendant claimed, and that they were not recorded in *Oxford* ; and that all their negotiations were with the intent of depriving the defendant

of the premises. The judge charged the jury, that the plaintiff's title was valid ; and this raises the only question in the case.

It has been made a question, whether *Nicholas Beardslee* and *Beardslee* and *Wheeler* acquired a title to the premises demanded, by virtue of the levy of the aforesaid executions.—On this point it is unnecessary to express an opinion ; but for the sake of argument, I admit the sufficiency of their title. The enquiry to which I shall confine myself will solely regard the validity of the deeds under which the plaintiff claims ; for if they are invalid, he is not entitled to recover.

I consider these deeds as ineffectual to convey the land in question, on two distinct grounds. In the first place, the grantor and grantee being disseised, and the land being in the occupation of the defendant, claiming to be the exclusive owner, the deeds, by the statute to prevent frauds, quarrels and disturbances in alienations of land, (*p.* 446. ed. 1808.) were null and void. The law has provided, that all alienations for the transferring of any right or title to lands, tenements or hereditaments, the present possessor only excepted, where the granor, or person conveying, is disseised, or ousted of the possession, shall be of no effect. *Isham* admr. v. *Avery*, 1 *Root* 100. *Holebrook* v. *Lucas*, 1 *Root* 199. *Freeman* v. *Thompson*, 1 *Root* 402. In such case, the grantor has not a complete title, the possession, an essential requisite being wanting ; and under such circumstances, to sanction a conveyance, would be promotive of litigation, and of the peculiar species of oppression, denominated *maintenance*. And so highly is such a practice reprobated, that the person attempting to convey, is made liable to the forfeiture of one half of the value of the lands granted.

It, however, has been argued, that the conveyances under which the plaintiff claims, are not embraced within the statute alluded to ; and in support of this position, reliance is placed on the case of *Gunn* v. *Scovill*, 4 *Day* 234. *Enos Gunn*, the plaintiff, who had a good title to the land demanded, mortgaged the same to *Isaiah Gunn*, as collateral security for the indorsement of a promissory note ; and when it became due, the defendant, by some means unexplained, had obtained possession of the premises, and claimed to hold adversely to both mortgagor and mortgagee. While in this situation, the mortgagee was indemnified, by the performance of the condition of the mortgage, and then released the land

*New-Haven,*
*Ju*y,
1823.

Hinman
*v.*
Hinman.

to the plaintiff, the mortgagor. This reconveyance of the mortgaged estate was held not to be within the provisions of the before-mentioned statute. Two principles were assigned by the court, as reasons to sustain their determination. The first was, that the statute prohibits the sale of disputed titles to real property; but that the release, by the mortgagee, was only a chattel interest, or chose in action. This was the light in which the estate of a mortgagee, at that time, was considered, and is, at present, viewed; and of consequence, the release of the mortgagee was not a conveyance of land. Another principle was advanced, which comprises the only doctrine, that gives even plausibility to the argument in favour of the plaintiff. It was said, " Whenever a person is mere trustee of a title, which, in good conscience, ought to be conveyed to the *cestui que trust*, the conveyance of that title is not within the statute, although some person should get possession of the premises holding adversely." In illustration of this principle, the court argued : " If *A.* should contract, by a written agreement, with *B.*, to sell to him *black-acre*, for one thousand dollars, and to convey the same by deed, within three months; in the mean time, *C.* enters, and disseises *A.*; would not *A.*, in pursuance of a fair contract, be justified in conveying to *B.*, if he was willing to receive the deed? Shall it be in the power of a wrong-doer to frustrate the honest views of *A.* and *B ?*"

The determination, in the case of *Gunn* v. *Scovil*, most obviously, has no relevancy to the question now agitated. The release, in that case, was not of " lands, tenements or hereditaments;" and this was one ground, and altogether sufficient, for the support of that decision. As little aid is derivable from the preceding principle, as from the determination of the case. It has, solely and exclusively, reference to an equitable title, first created, and *afterwards* endeavoured to be defeated, by the unauthorized act of a wrong-doer. A title of this sort, fairly acquired, the reasoning in the case supposes to be founded in *good conscience*, and the person endeavouring to frustrate the honest views of others, to secure the performance of which, a legal contract had been entered into, is considered as emphatically a tort-feasor. He is regarded, not as a disseisor merely, and on this ground, a trespasser; but as one who deliberately and iniquitously has attempted to defeat the title, which, in equity, was fairly acquired. How different the present case is, it demands little

perspicacity to perceive. The defendant was in the actual possession of the premises, under a title acquired for a valuable consideration, and by virtue of a deed legally executed. He, and those under whom he claims, had honestly occupied the land in question, for nearly fifteen years, under an equitable title at least, and one, which, undoubtedly, was believed to be legal, and which might, incontrovertibly, have been rendered such, by the registration of a deed. The plaintiff, having acquired knowledge, that the deed of *Moss* was not duly recorded, and with full knowledge that the defendant was in possession of the premises, made application to the creditors of the person last named ; or, which is the same in effect, application was made, by his assignees ; their debts against *Moss* were purchased at a discount ; and judgments upon them having been obtained, the land was levied upon ; and the defendant, thus, was awakened from his confident belief of having a good title. What was the basis of this unjust speculation ? An intention to wrench from the defendant property honestly and equitably acquired, by doing that, which, it would seem, the creditors of *Moss* were unwilling to do. In execution of the trust, arising by virtue of the contracts with *Nicholas Beardslee* and *Beardslee* and *Wheeler*, *posterior* to the adverse possession of the defendant, and with full knowledge of the fact, the deeds of release, under which the plaintiff claims, were made and delivered. The principle advanced, in the case of *Gunn* v. *Scovil*, gives sanction to no such transaction, and imparts validity to a deed, when grantor and grantee were out of possession, in those cases only, where the trust was, in good conscience, assumed, *anterior* to the adverse possession of the person whose title is in question. I feel myself obliged to go to the length of a decision, which, if it were *res integra*, I should be unwilling to approve ; but beyond the line marked out, by the determination in *Gunn* v. *Scovil*, I would not advance. The principle now contended for, if embraced, would entirely undermine the statute against the sale of disputed titles. A person out of possession, it must be granted, cannot give a deed to another, who is equally unpossessed ; but admit the doctrine contended for, and with a little preparatory management, it may always be done, without the least difficulty. The person who claims title to land, in the adverse occupancy of another, may enter into a written contract, on valuable consideration, to give a deed, and thus make himself the trustee

*New-Haven,*
*July,*
1823.

Hinman
*v.*
Hinman.

New-Haven.
July,
1823.

Hinman
v.
Hinman.

of a purchaser. The *cestui que trust*, having a supposed equitable right to the performance of the contract, may *now* take a conveyance, and the prohibition of the statute be silent. I cannot yield my assent to a principle, which sets, in my opinion, both common sense and the laws of the state at defiance; and even annuls them, by the compendious arrangement of parties. I would not be considered as admitting, that a court of chancery would carry into specific execution the contract made with the creditors of *Moss*. The defendant having an interest, must be made a party to a bill for this purpose; and against his objection, chancery would no more give validity to a proceeding in opposition to the prohibitory provision of the statute, than would a court of common law. In conclusion, I entertain no doubt that the deeds of release requisite to sustain the plaintiff's title, are prohibited by law, and, of consequence, are null and void.

I am, likewise, of opinion, that the deeds of release, obtained by the plaintiff, with knowledge of the defendant's title by deed, not recorded, are of no effect. The object of the law, in requiring deeds to be recorded, is to give notice of conveyances, for the security of purchasers; but where the purchaser has actual notice, this object is answered, and his subsequent purchase is *mala fide*. *Willet* v. *Overton & al.* 2 *Root* 338.

The plaintiff nominally is an assignee, but really purchased the debts against *Moss*, and by this act, laid the foundation of all the rights he can claim. Whether a person buy the land of another, with knowledge of its having been *bona fide* sold to one in possession, but that the deed has not been recorded,—or purchase a debt, under the same circumstances, anticipating the necessity of a judgment, the levy of an execution, and of a deed to confer upon him a legal title,—the cases are, essentially, the same. In both instances, he is a purchaser of the land, the only difference consisting in the mode of becoming such; and in both instances, acting with knowledge of the grant to another, his conduct is *mala fide*, as *he has all the notice which a record could give him*. The fraud and notice are identically the same, in both cases; and the same must be the legal effect.

The other Judges were of the same opinion.

New trial to be granted.