June, 1810.

GUNN
v.
SCOVIL.

---

ENOS GUNN *against* NOAH SCOVIL.

A. conveyed land by an absolute deed to B.; and B., at the same time, covenanted to reconvey on being saved harmless from an endorsement made by him for A.'s accommodation. Afterwards, B. was disseised by a stranger; the condition on the part of A. was performed; and B., while out of possession, reconveyed the premises to A. Held that such reconveyance was not within the statute against selling pretended titles.

MOTION for a new trial.

This was an action of ejectment.

The defendant pleaded the general issue. On the trial it appeared, that in 1802, the plaintiff had a good title to the demanded premises; when he conveyed the same to *Isaiah Gunn*, by an absolute deed legally executed. *Isaiah Gunn*, at the same time, gave the plaintiff a writing, by which he covenanted to reconvey the premises to the plaintiff, if the plaintiff should pay a note according to its tenor, made by him, and endorsed by said *Isaiah*, for 2,213 dollars, dated the 15th day of *December*, 1802, and payable on the 1st day of *July* then next, and should save said *Isaiah* harmless from his endorsement. The plaintiff failed to pay the note at the time it fell due, but indemnified *Isaiah* before the 26th of *February*, 1806; when *Isaiah* reconveyed the premises to the plaintiff, by a quitclaim deed, duly executed. At this time, the defendant was in possession of the premises, claiming adversely to both the parties to the deed; and on that ground he contended that the deed was void, being within the statute, tit. 97. c. 17. The court charged the jury, that the covenant to reconvey took the case out of the statute, and directed a verdict for the plaintiff; which was accordingly found. The defendant moved for a new

trial on the ground of a misdirection; which motion was reserved for the opinion of the nine judges.

*Daggett and N. Smith*, in support of the motion. The ground on which we move for a new trial is, that the court charged the jury, that the statute against selling pretended titles did not operate on the deed from *Isaiah Gunn* to the plaintiff, of *February*, 1806. If the deed be void, the plaintiff has no title at law; for it is agreed that he had before mortgaged the land in question to *Isaiah Gunn* by an authentic deed; and although that mortgage deed might be defeated in equity, yet *at law* it remains good. That a mortgagee has the whole legal estate in him, and may sustain an action of ejectment even against the mortgagor, will not now be disputed. The decision of the superior court, and of the supreme court of errors, in *Phelps* v. *Sage*, 2 *Day*, 151. establishes that point. In that case, the court refused to receive evidence in an action of ejectment brought by the mortgagee, that he had received and accepted the mortgage money after the law day had passed, to defeat his title.

In this case, the legal title, at the impetration of the plaintiff's writ, was in *Isaiah Gunn*, unless the deed of *February*, 1806, is good. The objection to that deed is, that when it was executed, neither the grantor nor grantee was in possession, but the defendant, *Noah Scovil*, held and occupied the premises adversely to both. The answer to that objection is, that *Isaiah Gunn* having been indemnified for endorsing the note, and having taken a deed of this land merely to indemnify him, was under an equitable obligation to reconvey; and that the performance of that duty shall not destroy the deed.

To this reasoning we reply, that the only inquiry which can ever be made, without new modelling the statute, is, was there an adverse possession against grantor and grantee? If there was, then a conveyance of the property so possessed, to any other person than the pos-

sessor, is within both the *letter* and the *spirit* of the law. The nature of the title or of the claim of the grantee; the reasonableness of his attempt to gain possession; the injustice of the defendant's resistance to the claim; are all considerations irrelevant to the question. The statute operates directly upon the *instrument of conveyance*, and not upon any agreement to convey, or any bargain for that purpose. Such agreement or bargain would not work any of the mischiefs which the statute designed to prevent; because evidence thereof could not authorize a recovery of lands.

It is here objected, that, as *Isaiah Gunn* has been indemnified, it is perfectly reasonable that he should reconvey; that the plaintiff cannot obtain the possession without such conveyance; and that, although *Isaiah Gunn* might sustain an action, get into possession, and then give a deed to the plaintiff, yet perhaps he will not do it. To this we reply,

1. There is not the least proof that *Isaiah Gunn* was not ready and willing to do all these things. It is, therefore, strange to ask the court to relieve the plaintiff from an embarrassment without showing that such embarrassment exists. If it does exist, it is clear that it arises from the negligence of *Isaiah Gunn* in permitting the defendant to hold these premises against him. But,

2. The plaintiff undoubtedly could compel *Isaiah Gunn* to obtain possession, that he might thereby vest him with a valid title.

It may be said, that administrators and assignees of bankrupts can give valid deeds, though out of possession. This is true; but it will be recollected, that in all these cases the deeds are given in conformity to the express directions of statute. Such persons are mere trustees; have no title in themselves; and sell merely as authorized agents. The statute in question was never considered as reaching such cases. In *Co. Litt.* 369. the doctrine is established for which we contend; and it is impossi-

ble, without legislating, to exempt this deed from the statute.

*Ingersoll* and *Staples*, contra, contended,

1. That the original conveyance from the plaintiff to *Isaiah Gunn* was *a mortgage*. What was the intent of the parties? Clearly not a sale. The conveyance was not made in contemplation of an eventual arrangement of property, but solely for the purpose of *security*. That the defeasance, or covenant to reconvey, was contained in a separate instrument, makes no difference. 1 *Pow. on Mort.* 146. *Belton* v. *Avery*, 2 *Root*, 279. *French* v. *Lyon*, 2 *Root*, 69. *Daniels* v. *Alvord et al.*, 2 *Root*, 196. 1 *Pow. on Mort.* 151, 152.

2. That the release, or reconveyance of *Isaiah Gunn*, having been made in pursuance of a previous legal agreement, was not within the statute. The object of the statute was to prevent maintenance; it corresponded with, and enforced, a principle of the common law, that a *chose in action* cannot be assigned. 1 *Plowd.* 88. But this quitclaim deed to the person having the equitable interest, instead of conducing to maintenance, diminished the sources of litigation. If *Isaiah Gunn* had refused to reconvey, after being indemnified, he would have been liable on his covenant. The plaintiff might have sustained an action at law, and recovered damages; or he might have gone into a court of equity and obtained a decree for a reconveyance. The covenant to reconvey was unquestionably legal at the time it was entered into. Then it is too much to say, that the person bound by such covenant could be discharged from the obligation merely by the tortious act of a third person. They cited 15 *Vin. Abr.* 155. pl. 22. *Stamp's Case*, 3 *Leon.* 78. 4 *Bac. Abr.* 495. (*Gwil.* ed.) and commented upon *Co. Litt.* 369.

REEVE, J. In this case, it was proved and agreed to, that in 1802 the plaintiff had good title to a certain tract of land, and was in possession thereof; and at that time conveyed it by deed to *Isaiah Gunn;* that afterwards said *Isaiah* reconveyed the same to the plaintiff. On the validity of this deed, the case depended. The defendant contended that he was in possession, holding the land adversely to said *Isaiah's* title, at the time that said *Isaiah* conveyed the same, and that the deed was, therefore, void by our statute; and introduced witnesses to prove that he was thus in possession at that time.

The plaintiff then offered in evidence an instrument in writing, executed by *Isaiah* to the plaintiff at the time that the plaintiff conveyed the land to said *Isaiah*, in which instrument said *Isaiah* stated, that he had become liable to pay a sum of money for the plaintiff, by reason of having endorsed a note for the plaintiff, and therein covenanted with the plaintiff, that if the plaintiff indemnified him from all loss, by paying the endorsed note according to the tenor thereof, he would reconvey said land to the plaintiff. On the trial it was admitted that the plaintiff did not pay said note at the time it fell due, yet he did eventually indemnify said *Isaiah*, and thereupon *Isaiah* did convey said land to the plaintiff. To the admission of the aforesaid instrument the defendant objected; which the court admitted, for the court was of opinion that this instrument rendered the estate a mortgage redeemable by the plaintiff, and that it was the duty of the mortgagee, as soon as his liability ceased, to reconvey; that immediately upon being indemnified by the plaintiff, he had no beneficial interest in the land, and was a mere trustee of the title for the plaintiff; that the entry of the defendant, and his adverse holding after the mortgage was executed, could not render a reconveyance by the mortgagee, when his interest therein had ceased, illegal; which was nothing more than restoring a pledge which he had received when the event had

6

taken place, on the happening of which he had cove-
nanted to restore it. That a contract perfectly lawful at
the time made, as that betwixt the plaintiff and *Isaiah*,
should be defeated by the subsequent entry of a *tort-feasor*, never could be contemplated by the legislature
when they enacted the law on which the defendant re-
lies. The mortgagee who is satisfied has no quarrel or
claim to sell; he has no interest in good conscience in
the estate. It was altogether immaterial to him, whether
the defendant or plaintiff held the estate. He had no
interest therein; only he held the evidence of a legal
title to it, which he had bound himself to restore upon
the happening of a certain event which had taken place.
Surely this could not be the mischief in selling pretended
titles which the law was enacted to remedy. If such a
construction was to be given to the statute as would em-
brace this transaction, it would be attended with mis-
chievous consequences.

If a *tort-feasor* should enter upon the mortgaged pre-
mises, and set up a claim to them, the mortgagor could
never get a title to his land, although he should be com-
pelled to pay the mortgagee his debt. If the entry of
the wrongdoer released the mortgagor from paying the
debt for which the land was pledged, until he could get
a title, there would seem to be some reciprocity pro-
duced by the tort; but that is not the case; and if the
mortgagee should take possession of the premises, it
would furnish him with a conclusive reason never to re-
convey to the mortgagor, although he was satisfied his
demand; for he has nothing to do but suffer any per-
son to oust him, and then his deed will be illegal, and
the mortgagor deprived of that evidence of title, which
in good conscience he is entitled to from the mort-
gagee.

In the argument it was urged, that the mortgagor
could, in chancery, compel the mortgagee to get pos-
session by suit, so that he might be able to convey. No

CASES DETERMINED IN THE

June, 1810. case of this kind is to be found in the books; and how
can it be done? Why should the mortgagee be at the
GUNN
v.         expense of bringing a suit to eject? He has no interest
SCOVIL.    in obtaining possession; and unless he suffered himself
to be ousted on purpose, he has done no wrong. He is
perfectly willing to reconvey, if by law he may. There
cannot be the smallest ground to contend, that a mortga-
gee, so circumstanced, should be obliged to embroil him-
self with a lawsuit to recover possession; and, of course,
a *tort-feasor* would have it in his power to hold out the
mortgagor for ever; for he, having no legal title, could
never recover the premises  It would seem absurd to
give such effect to the tortious act of a third person. It
cannot be supposed that the intention of the law was to
suffer a wrongdoer, by entry, to defeat or even embarrass
a fair contract made previous to the entry.

Whenever a person is a mere trustee of a title, which,
in good conscience, ought to be conveyed to *cestui que
trust*, the conveyance of that title is not within the sta-
tute, although some person should get possession of the
premises holding adversely. A mortgagee, whenever he
is satisfied the demand for which the land was mortgaged,
becomes a trustee of the title for the mortgagor.

If *A.* should contract, by a written agreement, with *B.*
to sell to him *black-acre* for one thousand dollars, and to
convey the same by deed within three months; in the
mean time, *C.* enters and disseises *A.;* would not *A.*, in
pursuance of a fair contract, be justified in conveying to
*B.*, if he was willing to receive the deed? Shall it be in
the power of a wrongdoer to frustrate the honest views
of *A.* and *B.?* for *A.*, in this case, is only a trustee of a
legal title. The sale was complete before, by the bar-
gain, and not within the statute. If such a conveyance is
within the statute, it puts it into the power of the man
who has fairly bargained and sold his land, by agreement
to convey at a future time, if he is dissatisfied with his
bargain, to defeat it. By a collusive disseisin, he puts it

June, 1810.

GUNN
v.
SCOVIL.

out of his power to convey; and if chancery could compel him to get possession; yet, the time for conveying the estate would have elapsed long before there could be any decision in chancery. On the other hand, *B.* is dissatisfied with his bargain, and procures *C.* to disseise *A.*, and then claims, that if *A.* cannot convey, he is not entitled to the purchase-money; and thus the most important contracts in society are defeated by the entry of a wrongdoer. Every contract of this kind, being out of the mischief which the statute meant to remedy, is to be considered as not within the statute.

Lord *Coke*, when commenting upon a similar *English* statute, after stating that branch of the statute which declares that no person can take, promise, grant, or covenant to have any right or title of any person, in or to any lands, tenements, or hereditaments, unless such person or their ancestors, under whom they claim, have been in possession of the same by the space of one whole year, on pain of forfeiture, &c. observes, that if a man mortgage his land, and afterwards redeem the same, he may at any time bargain, grant and contract for the land thus mortgaged; he need not have been in possession for the space of one whole year. Lord *Coke* must have supposed a case where mortgagor and mortgagee were both ousted of possession, and that subsequent to the mortgage, and before the redemption; and if this is the case, then it is an authority to prove that the mortgagee may convey to the mortgagor; for without such deed there is no redemption. The case put supposes the mortgagor to be in possession at the time that he mortgaged; for if he was then ousted, his deed would be void. The mortgagor must have been out of possession at the time of the redemption, otherwise the case could not have been put; for no one could have ever supposed that in case a mortgagee gave a deed to mortgagor whilst he was in possession, there could have been any necessity to observe that such mortgagor might convey at any time. So, too,

the mortgagee must have been out of possession in the case supposed; for it could not have occurred to any person that when the mortgagee was in possession, and gave a deed to mortgagor, on the mortgagor's redeeming, the mortgagor could be in any hazard, if he conveyed the land to any person. To incur the danger of the statute, there must have been an adverse holding by some person. The language of that observation, when detailed at length, is, if *A.* mortgages to *B.*, and *C.* holds against them subsequent to the mortgage, yet *A.*, after redeeming, may convey immediately. This implies that *A.* may redeem; for if he could not, such transaction would be void; and if *A.* may redeem, then *B.* may execute the conveyance of the land to him; for without this there can be no redemption.

It is a fixed principle of the common law, that a trustee has nothing to do with the conflicting claims of his *cestui que trust* and a third person. If *A.* delivers to *B.* any thing in trust, to keep in good faith, and *B.* so receives it, and *C.* claims it as his, *B.* has nothing to do with this claim. He may and ought to restore it to *A.*, and although it should eventually turn out that *C.* was the real owner, *B.* will be justified in delivering the thing bailed to *A.*

I entertain no doubt on this subject on another ground. The statute prohibits the sale of disputed titles to real property; and on this only it operates. I think it is too late to say that mortgages, in the hands of the mortgagee, are real property. They are only considered in that point of light for the purpose of enabling the mortgagee to get into possession when he wants the benefit of his pledge. When contemplated in every other point of light, they are personal property. They will pass by a will not attested with three witnesses, because not real. They will not pass in a will by the term " my real property," and will pass by the terms " all my personal property." A mortgage will not pass by the terms " my lands

and tenements," unless the mortgagee has no other lands to which the words apply. The wife of a deceased mortgagee cannot be endowed in mortgaged premises, because personal. Mortgaged premises never give a right of settlement to the owner. When a woman becomes a *feme covert*, her mortgages are at the disposal of her husband, as much as any *chose* belonging to her; and a settlement upon her before marriage will operate upon her mortgages, just as it does upon all her other *choses;* so that upon a dissolution of coverture by her death, they will belong to him, and on his death to his executor. The property therefore was *personal;* and it is not, in my mind, the least objection, that, by our usage, the conveyance is by deed, if that should be admitted to be necessary, since we have a law that requires deeds to be recorded. It would amount to nothing more than this, that there is in *Connecticut* one species of personal property that must be conveyed by an instrument authenticated in the same manner as when real property is conveyed; for in one court such property is real; to create the title there it is by deed. The mode of conveyance alters not the nature of the property. If, by any law or usage, we were obliged to sell by deed a horse, that horse sold would not be real. I apprehend that our courts mean to adopt that system of jurisprudence respecting mortgages adopted in *England.* Certain it is, we have adopted it hitherto, as I believe, in all cases decided by the court. Not to adopt it in the present case, or any other that may arise, would be to mar the symmetry of the system.

Although a case of mortgage might arise that would be within the mischief intended to be remedied, yet that is nothing if it is personal estate. It is not difficult to imagine a case of personal property which might be in such a situation that a conveyance of it would be within the mischief aimed at by the statute; but a conveyance of such property could not be operated upon by this

June, 1810.

statute, for it affects no property but real. I can never consider this property as real estate for the purpose of subjecting the grantor and grantee to a penalty, when we view it in all other cases as personal estate, except in the solitary instance alluded to.

In this opinion the other judges severally concurred.

New trial not to be granted.