EDWARD W. HARRAL vs. ALEXANDER LEVERTY AND OTHERS.

A party taking possession of land under a contract of sale and in expectation of a conveyance under the contract, is not holding adversely to the legal owner, and he can change his licensed possession into an adverse one only by explicit acts which give the owner notice of such adverse holding.

A party in possession in such a case is not properly a tenant at will, but a mere licensee.

A conveyance of land of which the grantor is ousted, made to a party to whom the grantor, before the ouster, had contracted to convey it, is not within the statute against selling pretended titles.

If the grantee was, upon any ground, equitably entitled to a conveyance, it would be valid although the land was held adversely by a third party.

A mortgage is not a "conveyance" under the statute against selling pretended titles.

Where A was equitably entitled to a conveyance of certain premises, and was in open and adverse possession, and the legal owner in fraud of his rights made a mortgage of the premises to a party who was ignorant of A's possession and of any equity on his part and who made the loan in good faith, it was held that he was not to be charged with notice of A's equity by reason of his having searched only the record title and not having inquired who was in possession.

A defendant, by a counter-claim under the Practice Act, can not bring in for adjudication any matter that is not so connected with the matter in controversy under the original complaint that its consideration by the court is necessary to a full determination of the rights of the parties as to such matter; or, if it is of a wholly independent character, is a claim upon the plaintiff by way of set-off, and not a claim against a co-defendant.

The Practice Act did not intend to give any wider range of equitable claim on the part of the defendant or defendants than that allowed by the settled chancery practice, by means of answers and cross-bills, in suits in equity; it being intended to allow such equitable defence in actions at law as well as in suits in equity; leaving the matters of set-off and recoupment, already available in actions at law, where they stood before the act was passed.

Where therefore, in a suit for a foreclosure, in which A and B were respondents, A set up in his answer that he was entitled to a conveyance of the property free from incumbrance from B, who held the legal title, but that B, in fraud of his rights, had made the mortgage in question, by reason of which he would be compelled, if the mortgage should be sustained, to pay a certain sum in redeeming the property, for which he prayed that, upon the foreclosure being granted, a judgment be rendered in his favor against B, it was held that he was not entitled to such a judgment.

SUIT for the foreclosure of a mortgage; brought to the Superior Court. Facts found by a committee and a decree of foreclosure passed. Motion in error by McDonald, one of the defendants. The case is sufficiently stated in the opinion.

*J. W. Parrott*, for the plaintiff in error.

*M. W. Seymour*, for the defendant in error.

LOOMIS, J. This is a suit for the foreclosure of a mortgage and for the possession of the mortgaged premises. The principal defendant is Samuel McDonald, who claims to be equitably entitled to the mortgaged premises, and to have been in adverse possession of them when the mortgage was made by the defendant Leverty, who held the record title, as well as at the time the premises were conveyed to Leverty.

It appears from the finding that on the 24th of December, 1874, Nathaniel Wheeler and Henry Sanford of Bridgeport, who were then the owners of a piece of land on one of the streets of that city, which included the land in question, made a written contract with the defendant Leverty, under which the latter was to erect a block of five brick dwelling houses on the land, of which Wheeler and Sanford were to purchase the eastern one at a stipulated price and to convey the rest to Leverty or his assigns at a stipulated price, the price of the land being applied toward payment for the house taken by them of Leverty and the balance payable to him in cash. They also agreed to procure mortgage loans on each of the next three houses, of $2,400 each, for the benefit of Leverty. On the same day Leverty contracted with Fones & Canfield, carpenters, to do all the wood work of the block for $2,300, to be paid for by a conveyance to them of the fourth house in the block from the east at the price of $4,100, they paying Leverty the difference, $1,200, in cash. Fones & Canfield being unable to perform the contract, assigned it, with the consent of Leverty, to the

defendant McDonald, who went on and performed it in full
to the satisfaction of Leverty, and became entitled to the
conveyance to him of the house which by the agreement
Fones & Canfield were to receive.   On the 22d of Novem-
ber, 1875, Leverty having accepted the work, McDonald
entered into possession of the house which was to be con-
veyed to him, and placed tenants in it with the knowledge
and approval of Leverty.   He began to occupy before
receiving his deed, but in the expectation of a conveyance
of the premises to himself, either from Leverty, when he
obtained title, or directly from Wheeler and Sanford.   The
premises thus occupied by McDonald are the mortgaged
premises to which the present suit relates.

We have thus a contract of Wheeler and Sanford to con-
vey the four houses of the block to Leverty on his complet-
ing the block, the contract of Leverty to convey the house
in question to McDonald on his completing the wood work
of the block, McDonald's completion of the wood work to
the acceptance of Leverty, and McDonald's entry into
possession with Leverty's consent in anticipation of the
conveyance to be made to him.   The rights of the parties
at this point are very clear and the whole case a simple one.

Thus matters stood until a dispute arose between
McDonald and Leverty as to whether the former was to
pay a certain bill of lumber, the particulars of which are
unimportant, but which resulted in Leverty's entering upon
the premises on the 10th of January, 1876, and compelling
the tenants to remove from the building, but upon McDon-
ald's arriving there was a contest for the possession, which
resulted in Leverty's locking some of the inside doors and
keeping the keys and in McDonald's continuing in the
general occupancy with the outside keys in his possession.
The occupancy was continued until April 1st, 1881, both
parties claiming during that period to have been in pos-
session.

On the 15th of January, 1876, Wheeler and Sanford
executed and delivered to Leverty a conveyance of the
property which by their contract they were to convey to

him, including the premises in controversy, which deed was soon after put upon record, and on the first of July, 1876, Leverty executed to the plaintiff, Harral, a mortgage of the house claimed by McDonald, for a loan of $2,400; the loan being made by Harral in good faith and with no knowledge of the claim of McDonald on the property, though without making inquiry beyond an examination of the record title.

The first question is, whether at the time of the conveyance by Wheeler and Sanford to Leverty, McDonald was in such possession of the premises in controversy as to have ousted the grantors, so that their deed was void under the statute against selling pretended titles. Gen. Statutes, p. 354, sec. 15. That statute is as follows:—" All conveyances and leases, for any term, of lands or tenements of which the grantor or lessor is ousted by the entry and possession of another, unless made to the person in actual possession, shall be void."

The finding of the committee with regard to the possession of McDonald is as follows:—" I find that when McDonald entered into the occupancy of said premises on the 22d of November, 1875, he so entered, not claiming any independent title, but acknowledging and recognizing said Wheeler and Sanford and said Leverty to be the legal owners thereof; that he commenced the occupancy of the premises by permission of said Leverty, but since January 10th, 1876, has continued such occupancy against his consent. But I find that he has ever held and now holds said occupancy, setting up no complete legal title in himself, but under a claim that said Leverty and said Wheeler and Sanford, as the holders of the legal title, were bound by a contract obligation to give him a deed thereof; and I find that no notice was ever given by McDonald to said Wheeler and Sanford that he claimed to hold adversely to them."

We think it clear that upon this finding, whatever might be the character of McDonald's possession as against Leverty, it can not be regarded as adverse to Wheeler and Sanford; and as they were the parties holding the legal title at the time of their conveyance to Leverty they

and they only were the parties whose ouster could affect the validity of their conveyance.

The authorities are numerous and agreed in support of the proposition that a party taking possession of premises under a contract of sale, and in expectation of a conveyance under the contract, is not holding adversely to the owner, and that he can change his licensed possession into an adverse one only by explicit acts on his part which give the owner notice of such adverse holding. In *Greeno v. Munson*, 9 Vermont, 37, REDFIELD, J., says, (p. 39,):—"No one who goes into possession of land under another, or acknowledging the title of another, will be heard to dispute the title of that other, during the continuance of the relation. The same doctrine has been extended to the case of one who goes into possession of land under a contract of sale." The case of *Ripley* v. *Yale*, 18 Vermont, 220, was a case like the present one, inasmuch as it was claimed that an adverse possession made void, under a statute like ours, a deed given by one Bly, the owner, to a stranger. WILLIAMS, C. J., says, (p. 222):—"It appears that the defendant entered into possession of the premises under a contract for the purchase of the same and claiming his right under and by virtue of the contract. We believe his possession, under such a contract, can not in any view of it be deemed adverse to Bly. * * While there subsists any contract, express or implied, for the purchase of the title, between the parties in and out of possession, the possession can not be adverse. * * Until he does some unequivocal act to manifest a repudiation of the contract and brings this home to the knowledge of the other party, he can not be considered as holding adversely to the person under whom he took possession." In *Ormond* v. *Martin*, 37 Ala., 598, it is held that where a party took possession under a bond for a deed and in expectation of a deed from the owner, he could not be holding adversely to the owner. The same doctrine is laid down in *Stamper* v. *Griffin*, 20 Geo., 312, and in *Long* v. *Young*, 28 Geo., 130. In the last case it is held that where a person held possession under a contract for a deed, and it

proved that the contract was executed by a person acting as agent for the owner, but who had no authority, so that the contract had no effect, the possession still could not be regarded as adverse to the true owner. In 3 Washburn on Real Property, 142, it is said that "where one enters in subserviency to the title of the real owner there must be a clear, positive, and continued disclaimer and disavowal of the title under which he entered, and an assertion of an adverse right, brought home to the owner, in order to lay the foundation for the operation of the statute of limitations." To the same effect see *Hall* v. *Stevens*, 9 Met., 418.

The text books and authorities are not altogether agreed as to the precise relation to the property and to the real owner, of a person who has entered into possession under an agreement to purchase. Some of them call him a tenant at will but others a mere licensee. In either capacity he would not be allowed, until by an unequivocal act he had repudiated the relation, to deny the title of the true owner. It seems to us that his position is that of a licensee. He enters under no promise to pay rent, but merely to wait for the consummation of his right to a conveyance from the owner, while it has been held by our own court in *Vandenheuvel* v. *Storrs*, 3 Conn., 203, that he is not liable for use and occupation. This view of his character is taken by the Supreme Court of the United States in *Burnett* v. *Caldwell*, 9 Wall., 290. SWAYNE, J., delivering the opinion of the court, says:—"If the contract stipulates for possession by the vendee, or the vendor puts him in possession, he holds as a licensee. The relation of landlord and tenant does not subsist between the parties. The characteristic feature of that relation is wanting. The vendee pays nothing for the enjoyment of the property. The case comes within the category of a license. In such cases the vendee can not dispute the title of the vendor any more than a lessee can question the title of his lessor." This view is supported by numerous authorities cited by the learned judge. It is enough for the present case that McDonald was in a position in which his possession could not be regarded as adverse to the owner.

But if the possession of McDonald could be regarded as adverse to Wheeler and Sanford, it does not follow that their deed to Leverty would be void. A conveyance made under a valid prior contract to convey is not in contravention of the statute. Such a contract made after the owner was ousted of course could not support a conveyance made while the ouster continued. But where made before it is a valid contract, and under it the purchaser acquires an equitable right which is not to be defeated, nor its right to a consummation in a legal title affected, by an after occurring ouster of the owner. In *Gunn* v. *Scovil*, 4 Day, 234, it is held that a conveyance by a mortgagee after the mortgage was satisfied, the mortgagor having since been ousted, was not within the statute. Here the ouster of the mortgagor was an adverse possession as to the mortgagee as well as the mortgagor. REEVE, J., in giving the opinion of the court, says, (p. 240):—" If *A* should contract by a written agreement with *B* to sell to him blackacre for $1,000, and to convey the same within three months, and in the meantime *C* enters and disseizes *A*, would not *A* in pursuance of a fair contract be justified in conveying to *B*, if he was willing to receive the deed? Shall it be in the power of a wrongdoer to frustrate the honest views of *A* and *B*? *A* in this case is only a trustee of the legal title. The sale was complete before, by the bargain, and was not within the statute.  *  * Every contract of this kind, being out of the mischief which the statute meant to remedy, is to be considered as not within the statute." This principle was recognized and applied by this court in the recent case of *Townsend Savings Bank* v. *Todd*, 47 Conn., 190. The general principle is laid down by the court (p. 219,) that " a conveyance made by a trustee to the party holding the equitable title is not a sale of a pretended title." In both these cases the party conveying held only a bare legal title, both being cases of releases of a mortgage title after the mortgage had been satisfied. But it is not necessary that the grantor should hold a bare legal title. Where the grantee holds an equitable title, with something further to be done on his part to

entitle him to a conveyance of the legal title, it is yet a case where the sale rests upon a contract made before the ouster and therefore not to be affected by it. Judge REEVE, in the remarks we have quoted, states the principle as applying to all cases of conveyances under previous contracts to sell. In this case it does not appear clearly whether the contract of Leverty with Wheeler and Sanford had been fully performed by him before McDonald asserted his right of possession against Leverty, but as the conveyance was made so soon after it is to be presumed that he had fully performed, so that the grantors were in the position of a party who held a bare legal title. We regard the point as unimportant.

It should be noticed, that while the contract of Wheeler and Sanford was to convey to Leverty " *or his assigns*," it is not found that Leverty had ever assigned his right to a deed of the premises in dispute to McDonald, while all the facts found seemed to render any such assignment improbable. The contract of Wheeler and Sanford therefore stood as one to convey to Leverty, and could be performed on their part only by a conveyance to him. They could not be affected by any controversy between Leverty and McDonald, even if it was brought fully to their knowledge. If McDonald wished to protect his rights he could at any time have brought all the parties into a court of chancery and had his rights adjudicated upon. Neglecting to do this he can not complain of a conveyance which Wheeler and Sanford were under a plain contract to make.

We conclude therefore that the deed of Wheeler and Sanford to Leverty of January 15th, 1876, conveyed a good legal title to the premises to Leverty.

Thus the matter stood until the first day of July, 1876, when Leverty made a mortgage of the premises in controversy to Harral, the plaintiff, for $2,400, and the next question is whether the possession of McDonald was at that time such as to make the mortgage void under the statute we have been considering.

The relation of McDonald's possession to the case has

now become entirely different from what it was when we before considered it. Then Wheeler and Sanford held the legal title and were the owners, and his possession, as we saw, could not in the circumstances be adverse to them. Now Leverty is the owner. It is true that McDonald took possession in the expectation of receiving a deed either from Wheeler and Sanford or from Leverty; but before the execution of the mortgage to Harral by Leverty a controversy had arisen between Leverty and himself with regard to the property, he had demanded a deed of Leverty who had refused to give it, and they had engaged in a personal contest for the possession of the premises. The finding is that McDonald entered into possession on the 22d of November, 1875, with the consent of Leverty, and that on the 10th of January, 1876, Leverty entered on the premises and caused the tenants of McDonald to move out, "and attempted to obtain exclusive control and possession of the tenement;" but that, while this was going on "McDonald arrived and entered on the premises and moved some of his own goods into the tenement, Leverty forbidding him to move in said goods or to remain therein;" the result being that Leverty left after locking some of the inside doors and carrying away the keys, while McDonald "continued in the occupancy of the premises, with the outside keys in his possession until April, 1881." In these circumstances it is impossible to regard McDonald as holding possession under a license from Leverty or in any other way than adversely to him, the notice to the latter of McDonald's repudiation of the license under which he originally entered, being given by the most unequivocal acts and declarations.

Regarding the possession of McDonald as sufficient therefore to make void a conveyance of the property by Leverty, under the statute, was the mortgage to Harral void? The statute invalidates all "conveyances" made by a grantor who is ousted, unless made to the person in possession. Was the mortgage such a conveyance?

It is contended by the counsel for Leverty in his brief that if it was, yet as Leverty had agreed in his contract

with McDonald to procure a mortgage of $2,400 for him upon the property, the latter can not now deny his right to make the mortgage in question. But the agreement was to procure a loan for McDonald's benefit, and surely this could not be regarded as authority to mortgage the property for a loan obtained for his own benefit and really in fraud of McDonald. Besides this, McDonald had twice before this demanded a deed of the premises from Leverty just as they were, which the latter had refused to give, and such a demand would be a waiver of his claim that Leverty should procure him the loan, inasmuch as the conveyance demanded would take away from Leverty the power to procure the loan on a mortgage of the property. It is clear that the mortgage can not be sustained upon this ground.

But we are satisfied that the mortgage is not to be regarded as a "conveyance" within the meaning of the statute. The precise point was decided by this court in the case of *Leonard* v. *Bosworth,* 4 Conn., 421. That was, it is true, a *qui tam* action to recover a penalty given by the statute, as it then stood, for receiving a deed of land of which the grantor was ousted, the deed in fact being a mortgage; but the question whether a mortgage is an alienation of the land within the meaning of the statute, was the same that would have been presented in any other case in which the question could have arisen. HOSMER, C. J., in giving the opinion of the court, all the judges concurring, says, (p. 424):—"Is a mortgage an alienation of land? The cases cited by the defendant show that it is not, and the point has frequently been decided in this court. * * A mortgage may be considered as a lien, by means of which the mortgagee may obtain possession, and, if his debt is not paid, appropriate the thing pledged in satisfaction; but it is no alienation 'for years, life, lives or forever, or for any other term of time whatsoever.' "

The phraseology of the statute has been changed in the Revision of 1875, (which is to govern this case,) but we can not regard the change as intended to affect the meaning. It seems to have been made merely for the purpose of con-

densation. As it stood before the revision the conveyances
invalidated by it were "all bargains, sales, leases, or alien-
ations for years, life, lives, or forever, or for any other term
or time whatsoever, of any lands, tenements or heredita-
ments." In the revision it is simply "all conveyances and
leases for any term of lands or tenements." The only point
of difference as to which any question can arise is in the
substitution of the word "conveyances" in the revision for
"bargains, sales or alienations" in the old statute. But as
it would have been easy for the revisers, if any change had
been intended, to use language that would have been
decisive of such an intent, and as other changes were made
in it which evidently were made solely for the purpose of
condensation, we must conclude that no change of meaning
was intended.

The case of *Leonard* v. *Bosworth* is strongly supported by
that of *Bates* v. *Coe*, 10 Conn., 280. The question there
was whether a mortgage was within the statute of 1828,
making void "conveyances and assignments" made by
persons in failing circumstances with a view to insolvency.
DAGGETT, C. J., giving the opinion of the court, says,
(p. 294):—"The prohibition is of conveyances and assign-
ments. But surely a mortgage is not an assignment, for
that passes the whole interest in the thing assigned; whereas
a mortgage creates only a lien in favor of the mortgagee.
Nor is it a *conveyance*, within the meaning of that term as
it has been understood by jurists in New York, Massachu-
setts, Maine and Connecticut for the last thirty years, and
by English judges for the last half century." After citing
a great number of cases from the English decisions and
from those of the states named, and among them that of
*Leonard* v. *Bosworth*, the judge adds:—"The result of all
these cases is, that a mortgage is not a conveyance of the
land, but a charge or lien upon it; and that the mortgagee's
interest is a chattel; and that he is vested with the right
to maintain ejectment to obtain and appropriate the pledge."

In *Clark* v. *Beach*, 6 Conn., 158, HOSMER, C. J., (dissent-
ing, but not disputed on this point, and quoted approvingly

by DAGGETT, C. J., in the foregoing opinion,) says:—
"Nothing is *conveyed* to the mortgagee; the equity of
redemption alone is an estate in the land. The mortgage
was intended as a security only, not as a sale." In *City of
Norwich* v. *Hubbard*, 22 Conn., 587, CHURCH, C. J., giving
the opinion of the court, says:—"A mortgagee has only a
lien, and can not be considered as owner of the mortgaged
estate." In *Mills* v. *Shepard*, 30 Conn., 101, ELLS-
WORTH, J., giving the opinion of the court, says:—"The
doctrine that a mortgagee of land is not the *owner* of it by
virtue of his mortgage deed, has been too often held by this
court and elsewhere to admit of a question in the mind of
any respectable jurist. He obtains a lien upon the land,
that is all. He is never spoken of as owner; nor is he such
even in a technical sense until he has obtained a foreclos-
ure." This principle was applied, in the case of *Whiting* v.
*City of New Haven*, 45 Conn., 303, in giving a construction
to the term "owner of land," under a provision of the
charter of the city requiring notice, and afterwards compen-
sation, to the owner of land taken for a public improvement,
the court holding that a mortgagee was not to be regarded
as the owner, but the person owning the equity of redemp-
tion.

It has been held in numerous cases that a mortgage of
insured property is not an *alienation* of it within the mean-
ing of a provision in a charter or policy making the policy
void if the property is "alienated by sale or otherwise."
*Jackson* v. *Massachusetts Mutual Fire Ins. Co.*, 23 Pick., 418;
*Rice* v. *Tower*, 1 Gray, 426; *Rollins* v. *Columbian Ins. Co.*,
5 Foster, 204; *Pollard* v. *Somerset Mutual Ins. Co.*, 42
Maine, 225; *Conover* v. *Mutual Ins. Co. of Albany*, 3 Denio,
254.

Were the question entirely a new one we should not
regard it as free from difficulty. It is manifest that the
statute can easily be evaded under the cover of a mortgage.
In *Gunn* v. *Scovil*, 4 Day, 241, which we have before
referred to upon another point, REEVE, J., in giving the
opinion of the court, in the course of an illustration of a

point that he is stating, says :—" The case put supposes the mortgagor to be in possession at the time he mortgaged; *for if he was then ousted his deed would be void.*" And HOSMER, C. J., in giving the opinion in *Leonard* v. *Bosworth*, 4 Conn., 421, in which he holds that a mortgage is not an alienation within the meaning of the statute, remarks that " mortgages are within the mischief at which the statute is aimed," but that they " are not within the literal construction of the act." We regard the question however as settled by the former decisions of our own court, while on the whole the weight of considerations, in view of the peculiar character of the interest of the mortgagee, is in favor of a construction of the statute which takes mortgages out of its operation.

If we are right in the views we have thus far taken there was no error in the judgment of the court below, holding the mortgage of Leverty to the plaintiff valid, and decreeing a foreclosure unless the mortgage debt was paid by McDonald or other of the respondents interested.

But the counsel for McDonald, in his assignment of errors, and in his brief, claims sundry minor errors to have gone into the judgment, which it becomes necessary for us to consider.

One of these is that his motion that Wheeler and Sanford should be cited in as co-defendants should have been allowed ; and another that the committee should have heard evidence upon the question of a fraudulent combination between Wheeler and Leverty to withhold from him the title to the property and vest it in Leverty. We will consider these two claims of error together.

The object of bringing in Wheeler and Sanford, and of the evidence as to a fraudulent conspiracy to withhold from McDonald the title, was mainly to procure the setting aside of the deed of Wheeler and Sanford to Leverty, and the vesting of the title in McDonald. A further claim is made in this connection which we will consider later.

It is obvious that if Wheeler and Sanford had been brought in, and evidence of the fraud had been received

and upon it the court had set aside the deed to Leverty, it could not have affected the mortgage held by the plaintiff. The deed to Leverty would not have been void, like a deed by a grantor who is ousted of possession, but would merely have been liable to be set aside by a court of equity, and if McDonald had in season procured an injunction against a conveyance or mortgage of the property by Leverty, or had brought a bill in equity against him to set aside his deed, the way would have been open for him to obtain the relief which he sought and to which he would on the facts claimed have been clearly entitled.     But he took no such measures, but left the record title standing unquestioned and undisturbed in Leverty until the latter, in July, 1876, made the mortgage to the plaintiff.   An attempt is made to impeach the mortgage by showing that the plaintiff did not inquire into the matter and learn of McDonald's possession and of his claim of equitable rights.    But he was not bound to inquire further than after the record title.   If an equity existed in McDonald it was for him to give notice of it to the plaintiff or to make sure that he had notice.   There was nothing on the public records to suggest an inquiry into the matter.    And the finding of the committee is explicit as to his want of knowledge.    It is that he "loaned said money and took 'said mortgage without knowledge of any claim of McDonald on the property, and his occupation thereof, and in good faith, supposing that Leverty had the undisputed title and possession, but without inquiring who was in possession."

The plaintiff therefore obtained a valid mortgage lien upon the property, and if the court had found and given full effect to the fraudulent conduct claimed on the part of Wheeler, Sanford and Leverty, it would not have set aside the mortgage to the plaintiff, but would merely have given McDonald the title subject to that mortgage.   McDonald therefore is not injured in being compelled to redeem that mortgage, since he would have been compelled to do it in any event, it having obtained a precedence of his own equitable rights that it could not be deprived of.

And the decree gives him precisely this. It is that "if the said McDonald shall, on or before said day [limited for redemption] pay said sums to the plaintiff, then and in that event it is ordered and decreed that * * * the title to said premises shall pass to and become vested in the said McDonald." This part of the decree is founded on the equitable right of McDonald to the premises under his contract with Leverty. This contract was admitted and becomes a part of the case, and it made wholly unnecessary an impeachment of the deed to Leverty for fraud, so long as such an impeachment of it would have resulted, as it necessarily would have done, in vesting the title in McDonald, so far as it gave him any, subject to the plaintiff's mortgage.

It is clear therefore that if the court committed any error in excluding this evidence and denying the motion to make additional parties defendant, no harm has resulted to McDonald from the error.

But McDonald further claims that he was entitled to a judgment against Leverty for damages for the fraud practiced upon him in withholding the deed to which he was entitled under his contract, and against Wheeler and Sanford also, if they were brought in as he moved to have them; and also a judgment against Leverty for six hundred dollars and interest, being the amount of the mortgage above the sum which by the contract he was to pay Leverty as the price of the premises which were to have been conveyed to him. This price by the contract was to be $4,100, of which $2,300 was to be applied in payment for the work done on the block by McDonald, and the balance ($1,800) was to be paid to Leverty by McDonald in cash. By the decree McDonald, after paying the mortgage debt, will become vested with the title to the premises; but instead of paying Leverty the $1,800 he will have been compelled to pay Harral, the mortgagee, $2,400, (taking here no account of interest on either side.) He will thus have paid $600 more than by the contract he was to pay. This he has been compelled to pay by the wrongful act of

Leverty in making the mortgage. On this ground he clearly had a claim on Leverty for $600 and interest, for which he claims that he should have had a judgment against him, as a part of the decree.

These claims are made under the provisions of the Practice Act of 1879. That act provides, in section 6, that courts may "administer legal and equitable rights and apply legal and equitable remedies, in favor of either party, in one and the same suit;" and in section 12, that "any person may be made a defendant who has or claims an interest in the controversy or any part thereof adverse to the plaintiff, or whom it is necessary, for a complete determination or settlement of any question involved therein, to make a party;" while section 7 provides that the same suit may embrace "claims, whether in contract or tort, or both, arising out of the same transaction or transactions connected with the same subject of action." The 5th section provides for counter claims, which it is reasonable to suppose were intended to embrace as wide a diversity of claims as the complaint, as follows:—"In cases where the defendant has either in law or equity, or in both, a counter-claim or right of set-off against the plaintiff's demand, he may have the benefit of any such set-offs or counter-claims by pleading the same as such in his answer and demanding judgment accordingly."

This important part of that statute has never been before this court for construction. After careful consideration we have come to the conclusion that it did not intend to give any wider range of equitable claim on the part of the defendant or defendants than that allowed by the settled chancery practice, by means of answers and cross-bills, in suits in equity; it being intended to allow such equitable defence in actions at law as well as in suits in equity, leaving the matters of set-off and recoupment, already available in actions at law, precisely where they stood before the act was passed. If this was all that was intended we are able to determine in every particular case whether a cross-suit or counter-claim, or cross-claim between co-plaintiffs or co-

defendants, can be entertained by the court, by applying the familiar rules of equity practice.

Let us see what these rules are, so far as they apply to the question we are now considering.

Story says in his Equity Pleadings, § 389:—" A cross-bill, *ex vi terminorum*, implies a bill brought by a defendant in a suit against the plaintiff in the same suit, or against other defendants in the same suit, or against both, *touching the matters in question in the original bill.* A bill of this kind is usually brought, either (1) to obtain a discovery, &c.; or (2) to obtain full relief to all parties, *touching the matters of the original bill.*" And in § 392:—" It frequently happens, and particularly if any question arises between two defendants to a bill, that the court can not make a complete decree without a cross-bill or cross-bills, to bring *every matter in dispute* completely before the court, to be litigated by proper parties and upon proper proofs. In such a case it becomes necessary for some one or more of the defendants to the original bill to file a cross-bill against the plaintiff and some or all of the other defendants in that bill, and thus to bring *the litigated points* fully before the court." And in § 396:—" Upon hearing a cause it sometimes appears that the suit already instituted is insufficient to bring before the court all matters necessary to enable it fully to decide upon the rights of all the parties. This most commonly happens where persons in opposite interests are co-defendants, so that the court cannot determine their opposite interests upon the bill already filed, and yet the determination of their interests is necessary to a complete decree *upon the subject matter of the suit.*" And in § 399:—" A cross-bill, being generally considered as a defence *to the original bill,* or as a proceeding necessary *to a complete determination of a matter already in litigation,* the plaintiff is not, at least as against the plaintiff in the original bill, obliged to show any ground of equity to support the jurisdiction of the court. It is treated, in short, *as a mere auxiliary suit,* or as a *mere dependency upon the original suit.*"

In *Vanderveer* v. *Holcomb*, 17 N. Jer. Eq., 89, the chancellor says:—" A decree between co-defendants may be grounded on evidence *between plaintiffs and defendants.* Where a case is made between defendants by evidence arising from pleadings and proofs *between plaintiffs and defendants,* a court of equity is not only entitled to make a decree between the defendants, but it is bound to do so." In *Elliott* v. *Pell,* 1 Paige, 268, the chancellor says:—" It is the settled law of this court that a decree between co-defendants, grounded upon the pleadings and proofs *between the complainant and the defendants,* may be made ; and it is the constant practice of the court to do so to prevent multiplicity of suits. But such decree between co-defendants, to be binding upon them, must be founded upon and connected with the *subject matter in litigation* between the complainant and one or more of the defendants."

Numerous other authorities, English and American can be cited to the same effect.

That the statute did not intend to give a wider range to equitable defences and cross-suits, is, we think, inferable from the rules of practice under it established by the judges of the Supreme and Superior Courts, under an act of the legislature which gives the rules the authority of an enactment. The seventh section of chapter 3 of these rules is as follows :—" Transactions connected with the same subject of action may include any transactions *which grew out of the subject matter in regard to which the controversy has arisen,* as, for instance, the failure of a bailee to use the goods bailed for the purpose agreed, and also an injury to them by his fault or neglect." The next section is as follows:— " Cross-complaints, *of the nature of cross-bills in equity,* touching matters *in question in the original complaint,* may be filed by the defendant in any action, whether such action be for legal or equitable relief; and additional parties may be summoned in to answer the same if necessary." And chapter 5, sec. 1, speaks of counter-claims for equitable relief as " *of the nature of cross-bills in equity.*"

We are satisfied therefore that a defendant by a counter-

claim under the statute, cannot bring in for adjudication any matter that is not so connected with the matter in controversy under the original complaint that its consideration by the court is necessary to a full determination of the rights of the parties as to such matter in controversy, or, if it is of a wholly independent character, is a claim upon the plaintiff by way of set-off, and not a claim against a co-defendant.

Under this rule can the matters which McDonald sought to bring into the present suit, and which were ruled out, be regarded as admissible?

One of these matters is a claim for damages on Leverty for his fraud in withholding from him the legal title to the premises and making the mortgage upon them which is now before the court; with a further claim that Wheeler and Sanford should be brought in as additional defendants, that he might recover damages also against them for their fraudulent combination with Leverty to keep him out of the legal title. With regard to this claim it is perfectly clear that it does not in any manner grow out of the subject matter in controversy, nor is it necessary to a full adjudication upon that subject matter. It does not touch the question whether the plaintiff is entitled to a foreclosure, nor whether McDonald has an interest in the mortgaged premises which is to be protected by the decree. And whatever claim he has upon these parties for damages is left wholly unimpaired and can be made the subject of an action at law at his pleasure.

The other matter ruled out by the court below is the claim of McDonald to a judgment against Leverty for the $600. It is clear that he had a claim on him for that amount; and it seems to have grown out of the matter in controversy, though a judgment upon it does not seem to have been necessary to a full disposition of the real subject matter of the suit. The suit involved the questions, whether the plaintiff was entitled to the mortgage debt which he claimed, and whether a decree for a foreclosure would do injustice to any parties having an interest in the

mortgaged premises. In other words, the matter in contro-
versy embraced the mortgage debt and the mortgaged
property as its security. It was on the ground of its
including the mortgaged property that that part of the
decree was made, and which is not complained of by any
of the parties, which gave the legal title to the premises to
McDonald on his paying the mortgaged debt—a protection
of his rights in the matter requiring that the title should be
so vested in him if he should redeem the property. If this
had not been done he would have been compelled either to
abandon the property, or to redeem it with the title remain-
ing in Leverty and at the risk of further complication of
the title by further fraudulent acts on the part of the latter.
Besides which, it was for the interest of the mortgagee that
McDonald should be protected in redeeming the property,
as it increased his chances of the debt being paid. But a
judgment against Leverty for the $600 was in no manner
necessary for the protection of McDonald's equitable inter-
est in the property. His claim upon Leverty for this sum
was in no manner prejudiced by the refusal of the court to
render a judgment upon it in the present suit. He could
bring an action against him at his pleasure. We think
therefore it was not his right that the matter should be
adjudicated upon in the present suit.

We are clear that the court committed no error in any of
its rulings.

In this opinion the other judges concurred.