JAMES DOWNING ET AL. *vs.* CALVIN WILCOX.

Second Judicial District, Norwich, April Term, 1911.
HALL, C. J., PRENTICE, THAYER, RORABACK and WHEELER, JS.

Loss or damage resulting to one from the performance of an act done at the request of another,· is a sufficient consideration for the latter's promise of indemnity.

A sale of wood and² timber standing on land owned by the defendant, and a subsequent promise by the defendant to indemnify the vendees if they would cut the wood up to a certain line which in fact was upon land of the adjoining proprietor, are separate and distinct transactions.

Under a counterclaim, the use of which is regulated by § 612 of the General Statutes, a defendant cannot bring in for adjudication any matter (unless it be a subject of set-off) that is not so connected with the matter in controversy under the complaint that its consideration by the court is necessary for a determination of the rights of the parties as to that controversy.

The plaintiffs sought to recover, under a contract of indemnity, for the loss sustained by them in the cutting of wood and timber up to a certain line staked out by the defendant as the northern boundary of his land, but which in fact was upon land of an adjoining proprietor. The defendant filed a counterclaim for trees of his which were cut by the plaintiffs outside of the tract over which they had acquired the right to cut, to which the plaintiffs demurred. *Held* that inasmuch as the plaintiffs' case rested on contract and the defendant's on tort, and there was no connection between them, the defendant could not recover on his counterclaim, and the demurrer was therefore properly sustained.

Courts of equity exercised jurisdiction upon the subject of set-off before the enactment of the statute of George II, which first conferred upon courts of law power to do so.

The adoption of the Practice Act has not deprived our courts of the power to allow an equitable set-off where the occasion requires it; but a claim arising from tort has never been brought within the application of this principle.

The right of set-off, whether legal or equitable, has always been confined to rights arising from contract.

Argued April 27th—decided June 15th, 1911.

ACTION to recover damages for the breach of an alleged contract of indemnity, brought to the Court

of Common Pleas in New London County and tried to the jury before *Waller, J.;* verdict and judgment for the plaintiff for $500, and appeal by the defendant. *No error.*

The complaint alleges, in substance, the following facts: The defendant, for consideration, sold to the plaintiffs the wood and timber standing upon certain land described in the contract of sale by bounds, and containing by estimate twenty-four acres. The north bound was in part land of one Gardner, and the south in part land of the defendant. The defendant thereupon went upon the premises with the plaintiffs, and surveyed and staked out a line as the bound on Gardner, and agreed with the plaintiffs, in consideration that they would cut to the line so defined, that he would save them harmless from any loss, cost or damage incurred by them by reason of such cutting. The plaintiffs thereupon, acting under said sale and agreement, cut the wood and timber up to said line. Gardner thereupon brought an action against them, alleging that in so cutting they had trespassed and cut upon his (Gardner's) land. Gardner recovered judgment which, together with certain costs and expenses necessarily incurred by the plaintiffs herein in defending the action, they were obliged to pay, and did pay. The defendant had full knowledge of, and assisted in, the defense of said action, and consulted and advised with the plaintiffs in all that they did therein. The defendant has never paid the plaintiffs the amount which they so paid, and has failed and refused to do so.

A demurrer to the complaint, upon the ground that it appeared therefrom that the agreement sued upon was without consideration, was overruled.

The defendant set up "by way of set-off and counterclaim" that the plaintiffs, in cutting the wood and timber upon the land covered by the sale described in

the complaint, had gone over its south line upon the land of the defendant, and there cut a considerable number of trees of varying diameters specifically set out, claimed damages as provided by statute, offered to set off so much as might be necessary against the plaintiffs' demand, if any should be found to exist, and claimed judgment for the balance.

The plaintiffs demurred to this pleading upon the ground, in substance, that the cause of action therein set up was not one which could be pleaded by way of set-off or counterclaim in the present action. This demurrer was sustained.

*William H. Shields* and *Telley E. Babcock*, for the appellant (defendant).

*Donald G. Perkins*, for the appellees (plaintiffs).

PRENTICE, J. The demurrer to the complaint was properly overruled. The agreement of indemnity, set up as the basis of recovery, related to land not covered by the pre-existing sale of standing timber. Upon the allegations, it was both subsequent to and entirely outside of that transaction. Ample consideration to sustain it is to be found in the promisees' action in conformity to the agreement, and the resulting loss to them. *Clark* v. *Sigourney*, 17 Conn. 511, 517.

The demurrer to the set-off and counterclaim raises the question of the defendant's right to counterclaim his cause of action set up. The use of set-off and counterclaim in our practice results from and is regulated by that section of the Practice Act which is now § 612 of the General Statutes. There are certain other statutes, such as §§ 624, 640 and 650 *et seq.*, and certain Rules of Court, such as §§ 171 to 175, touching the matter; but they are of only incidental consequence,

and do not materially concern the present inquiry. We had occasion in *Boothe.* v. *Armstrong*, 76 Conn. 530, 532, 57 Atl. 173, to note that while our Practice Act had appropriated the code term "counterclaim," it was nowhere, either in statute or rule, defined, and its scope determined, as it is in the codes of other jurisdictions, and that its definition and scope has been left to judicial determination. In that case we said that the term is used in our statutes and rules in a comprehensive sense, inclusive of all manner of permissible counter demands. There was no attempt, however, to define or to lay down rules for the determination of what counter demands in any given case would be permissible. The first and only attempt to perform that duty in any broad way was made shortly after the Act was adopted, in a carefully considered opinion written by the late JUDGE LOOMIS. The conclusion of the court is expressed as follows: "We are satisfied therefore that a defendant by a counterclaim under the statute, cannot bring in for adjudication any matter that is not so connected with the matter in controversy under the original complaint that its consideration by the court is necessary for a full determination of the rights of the parties as to such matter in controversy, or, if it is of a wholly independent character, is a claim upon the plaintiff by way of set-off, and not a claim against a codefendant." *Harral* v. *Leverty*, 50 Conn. 46, 63.

All permissible counterclaims were thus, for description and treatment, divided into two classes, to wit: those which are claims by way of set-off, and those which are not. We have no concern here with claims of the first class, whether the term "set-off," as used in the definition given, should be understood broadly as descriptive of set-off in its most comprehensive sense, as defined by some statutes regulating set-off in actions at law, and also equitable set-off as ad-

ministered in courts of equity, or in some more strict and narrow sense determined by our statute. It is evident, however, that the definition to be complete must be construed to embrace equitable set-off. Courts of equity exercised jurisdiction upon the subject of set-off before the statute of 2 Geo. II, which first conferred upon courts of law the power to do so. The enactment of that and following statutes in England and this country made the occasions rare when equity courts were called upon to exercise their jurisdiction. But they retained it, and upon proper occasion exercised it, where the law courts were unable to accomplish what equity demanded by reason of their being circumscribed in their power by the statutes. *Blake* v. *Langdon*, 19 Vt. 485, 492; *Duncan* v. *Lyon*, 3 John. Ch. (N. Y.) 351, 357; *Ex parte Stephens*, 11 Ves. Jr. 24, 26; 2 Story on Equity Jurisp. (12th Ed.) § 1431 *et seq.* The existence of this power in our own courts of equity was recognized before the adoption of the Practice Act, and of course was not lost by its adoption. *Goodwin* v. *Keney*, 49 Conn. 563, 569. In the somewhat recent case of *Hubley Mfg. & Supply Co.* v. *Ives*, 81 Conn. 244, 247, 70 Atl. 615, there was an appeal to this power. Further than this we need not go in determining the scope to be given to the term as used in *Harral* v. *Leverty*, 50 Conn. 46, since a claim arising from tort has never been brought within its application. The right of set-off, whether legal or equitable, has always been confined to rights of action arising from contract. The defendant's action in setting up his counterclaim must find its justification, if any there is, outside the field of set-off. *Plumb* v. *Griffin*, 74 Conn. 132, 135, 50 Atl. 1; *Lovell* v. *Hammond Co.*, 66 Conn. 500, 508, 34 Atl. 511.

The complaint is one upon contract. The counterclaim sets up a cause of action in tort. The subject of

action in the former is an agreement of indemnity; in the latter it is the cutting of trees upon the defendant's land. The matters in controversy in the one case arose from a breach of the contract, and in the other from the trespass committed. So far it is difficult to discover anything in the situation to form any connecting link between the two causes of action, except that the plaintiffs and the defendant are the parties involved in both cases. This clearly is not enough to justify the counterclaim of the one cause of action against the other.

If we look further for some feature which might be claimed to furnish such justification, it appears that the agreement sued upon by the plaintiffs was given to indemnify them for the consequences of their cutting the timber upon a tract of land belonging to one Gardner, which tract adjoined along its south boundary another tract owned by the defendant, and over which the plaintiffs had acquired the right to cut, which last-named tract in its turn adjoined on its south side other land of the defendant, in which the plaintiffs had no rights, and that, by possibility, although that fact is not averred, the cutting upon the northernmost or Gardner tract and that upon the southernmost tract owned by the defendant, were done as a part of one general cutting enterprise, which involved both them and the intervening tract. In other words, it is possible by going far enough back in the history of events to arrive at a point where two torts are reached, which, while essentially independent, and committed against different persons and upon separated lands in different ownership, have this possible connection between them, that they were both committed at some time in the pursuit of a common enterprise.

A closer connection it is impossible to get, and this does not approach to conformity to any rule regulating the right of counterclaim which has ever been formu-

lated in code or statute, or applied by judicial construction, as far as we are aware. It certainly does not to that stated in *Harral* v. *Leverty*, 50 Conn. 46. There is no connection between the indemnity agreement and the trespass upon the defendant's land. There is none between the matter in controversy resulting from the alleged breach of that agreement and that resulting from the alleged tort, and much less one whose consideration is necessary to a full determination of the rights of the parties. It would not materially change the situation if the latter qualifying language were modified in the direction of greater liberality, or even eliminated. The result would not be different if the usual code provision of other States were substituted as furnishing the test. That provision authorizes the pleading as a counterclaim, other conditions being satisfied, of "a cause of action arising out of the contract or transaction set forth in the complaint as the foundation of the plaintiff's claim, or connected with the subject of the action." Pomeroy on Code Remedies (4th Ed.) § 602. The tort upon which this counterclaim is based certainly did not arise out of the indemnity contract. Neither did it arise out of the transaction set forth in the complaint as the foundation of the plaintiffs' claim. That transaction was the making of the contract. It was not connected with the subject of action, which again was the contract, or, if you please, that contract taken in connection with the sale of timber upon land not that involved in the counterclaim, and the cutting of timber upon land not the defendant's.

There is no error.

In this opinion the other judges concurred.