ISAAC J. BOOTHE (MARY W. BOOTHE, EXECUTRIX) vs. SHERMAN ARMSTRONG.

Third Judicial District, New Haven, January Term, 1904.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

"Counterclaim," as used in the Practice Act and rules thereunder, is a general and comprehensive term, and includes all manner of permissible counter-demands. Accordingly, under Rule V, § 3, the plaintiff's withdrawal of an action in which a "set-off" has been filed does not impair the right of the defendant to have the case remain upon the docket for the prosecution of that demand ; although under the former procedure such withdrawal would have carried the set-off with it.

Argued January 22d—decided March 3d, 1904.

ACTION upon the common counts to recover for money loaned, brought to the Superior Court in New Haven County and withdrawn by the plaintiff after the defendant had filed defenses by way of set-off ; the defendant moved to restore the case to the docket, to which the plaintiff demurred, and the court, *Shumway, J.,* reserved the case for the advice of this court. *Superior Court advised to overrule demurrer.*

The defendant, having been sued on the common counts, filed his answer containing a general denial and two separately numbered defenses entitled, "By Way of Set-off." The plaintiff replied and issues were joined by the defendant's rejoinder. A committee was appointed to hear the case. While the cause was so pending the plaintiff died. His executrix not having entered within six months, the defendant, pursuant to § 1131 of the General Statutes, had a writ of *scire facias* issue against her to show cause why judgment upon the set-offs should not be rendered against her. The parties thereupon stipulated that the action revive, that the executrix enter, and that it be proceeded with before the committee, "such procedure of such committee to be continued and completed in the same manner and to the same effect as if said Isaac J. Boothe had not

died." A few months later the plaintiff filed a withdrawal of the action. The defendant thereupon filed a written motion for the restoration of the case to the docket. To this motion the plaintiff demurred. The defendant claims (1) that by force of the stipulation the case was not subject to withdrawal, and should therefore be restored as asked; and (2) that in any event he is entitled to have the case, in so far as his causes of action entitled "By Way of Set-off" are concerned, restored to or remain on the docket, so that he may pursue them to judgment.

*Edward A. Harriman*, for the plaintiff.

*Verrenice Munger* and *Robert L. Munger*, for the defendant.

PRENTICE, J. The claims set up in the second and third answers are of such a character that, before the adoption of the Practice Act, they would have been subjects for set-offs in the action. The withdrawal of the action would have carried with it the withdrawal of the set-offs. *Anderson* v. *Gregory*, 43 Conn. 61, 63. The principal question we have to consider involves the inquiry as to whether or not the Practice Act and rules under it have wrought any change in this regard.

For many years before the adoption of that Act, the right of a defendant, in an action "for the recovery of a debt" to set-off "mutual debts," and, if the situation warranted, have a judgment for excess, had been given by statute. Our courts had also recognized the right of a person sued in an action upon contract, to recoup or cut back the amount which the plaintiff might recover, by showing a right of action for damages in himself arising out of the same contract or, in a qualified sense, transaction. *Avery* v. *Brown*, 31 Conn. 398; *Beecher* v. *Baldwin*, 55 id. 419. Set-off was of statutory origin: recoupment of judicial. Both involved the existence, in favor of the defendant, of an independent cause of action which he might pursue in a

separate action. In set-off the defendant might have a judgment for an excess of his claim over that of the plaintiff : in recoupment he could not.

The New York Code of Procedure as amended in 1850, for the first time, we believe, made use of the term "counterclaim " as applied to matter which a defendant might plead for his protection against the plaintiff's demand. The term as thus used was carefully defined and so defined, as it continues to be in the New York Code, as to include not only set-off and recoupment, but all manner of permissible counter-demands, whether legal or equitable. The definition does not include defensive matter, but matter which would furnish the basis of an independent action on the part of the defendant, and in the presentation of which he assumes the position of the actor. This term has since been incorporated into all the code practice systems of the country. In most jurisdictions it is employed with the same comprehensive meaning that was first given to it in New York. This, however, is not universally true, for there are systems which continue the use of the term "set-off," " counterclaim " being generally, if not uniformly, so defined as to include all other counter-demands which may be offensively pleaded.

Our Practice Act appropriated the term but did not define it. It is not, however, difficult to discover in what sense it was intended to be used and ought to be interpreted. The term itself is a general and comprehensive one, naturally including within its meaning all manner of permissible counter-demands. It was a term in use, before its appropriation in this State, as and in the sense already indicated. We fail to discover any good reason for the recognition of any distinctions between different classes of counter-demands, or the retention of a terminology indicating such distinctions. If there are no such reasons, the spirit and purpose of the Act calls for a construction of its language which shall simplify rather than complicate it. The Rules under the Practice Act—which were promulgated by the judges of the Superior Court under the authority of the Act, and which were, as a

matter of common knowledge, prepared by the framers of the Act—in the sections which make up division V thereof, entitled "Counter-Claims and Cross-Complaints," throw no little light upon the meaning in which the word in question was employed. All these considerations, when taken in connection with the language of § 5 of the Act, lead to the conclusion that the term "counterclaim" in the Act and rules is used in its natural and comprehensive sense, and as including and not excluding set-off. The explanation of the presence of the latter term in the section is doubtless to be found in the fact that the right of set-off then existed by the express provision of statute, and that it was desired to make it clear that this statutory right was embraced within the provisions of the section. It was therefore expressly named, but not named with any intention to exclude set-offs from the class to which the descriptive term of "counterclaim" was given. The line of argument to the contrary would, when applied to the language of § 640 of the General Statutes, tend to demonstrate the altogether untenable proposition that equitable rights could not furnish the foundation for a counterclaim.

It follows that the provisions of § 3 of division V, of the Rules under the Practice Act—to the effect that the withdrawal of an action, after a cross-complaint or counterclaim has been filed therein, shall not impair the right of the defendant to prosecute such cross-complaint or counterclaim as fully as if said action had not been withdrawn—meet the present situation and establish the present defendant's right to have the case remain upon the docket that he may pursue his counterclaims, notwithstanding any rule of law to the contrary existing under the former modes of procedure. It having been wrongfully stricken off, he is entitled to have it restored for the purpose indicated. The right of the plaintiff to withdraw the action and thereby withdraw from the cognizance of the court his own cause of action, is of course unimpaired. That the defendant has chosen to entitle his claims as set-offs cannot militate against this right. They are no less counterclaims because they chance to be desig-

nated as set-offs ; in fact they are counterclaims because they answer the statutory requirements of a set-off.

There is no occasion to consider the questions raised under the stipulation.

The Superior Court is advised to overrule the demurrer to the motion to restore.

Costs in this court will be taxed in favor of the prevailing party.

In this opinion the other judges concurred.