ISAAC J. BOOTHE (MARY W. BOOTHE, EXECUTRIX, SUBSTITUTED PLAINTIFF) vs. SHERMAN ARMSTRONG.

Third Judicial District, New Haven, June Term, 1907.

BALDWIN, C. J., HAMERSLEY, HALL, PRENTICE and THAYER, Js.

One object of the Practice Act was to enable parties to finally settle all their controversies in one civil action, so far as that can be accomplished conveniently.

A plaintiff may undoubtedly withdraw from the consideration of the court the cause or causes of action alleged by him in his complaint; but since the adoption of the Practice Act he cannot, by an attempted withdrawal of "the action," prevent the defendant from obtaining a trial upon a proper counterclaim or set-off previously filed; nor, on the other hand, is the court thereby deprived of its power or jurisdiction to restore "the entire case" to the docket, upon a motion to that effect made by the plaintiff after discovering the futility of his attempt to withdraw the whole subject-matter of the litigation.

In an action to recover money loaned, the defendant filed a counterclaim for goods made and delivered to the plaintiff pursuant to a written contract, a copy of which formed part of the answer, alleging that a certain sum was due him on account thereof. By the terms of the contract the goods were to be made of the material furnished by the plaintiff at its cost price, and this was to be credited to the plaintiff and to remain his property until paid for. *Held* that the amount due the defendant for the goods made by him pursuant to the contract, depended upon the amount due the plaintiff for the cost price of material; and therefore a denial of the de-

fendant's allegation of the amount due him, put in issue the amount due the plaintiff for material furnished for making the goods.

Argued June 13th—decided July 30th, 1907.

ACTION to recover for money loaned, brought to the Superior Court in New Haven County and referred to a committee who found and reported the facts; the court, *Shumway, J.,* accepted the report, found the facts as therein stated, and rendered judgment for the plaintiff for $982, from which the defendant appealed. *No error.*

On September 21st, 1898, Isaac J. Boothe was the owner of a manufacturing plant for making fish reels, which plant, with the good-will of the business, he desired to sell. Sherman Armstrong was desirous of investigating the business of making fish reels, and, if he found it satisfactory, of purchasing the same. On that day Boothe and Armstrong executed a written contract by which Armstrong might carry on, with Boothe's plant, the business of making reels during the season of 1898 and 1899, and at his option might purchase said plant and business at any time before April 1st, 1899. This agreement, in so far as it affects the questions presented by the appeal, is in substance an agreement that Armstrong shall have the use of Boothe's plant, rent free, and shall have the contract for making the fishing reels wanted by Boothe during the season of 1898 and 1899, at the prices specified in the schedule attached to the agreement, and that Boothe shall furnish Armstrong such materials as he may need for the construction of the reels ordered by Boothe, which materials are to be charged to Armstrong at the cost prices and are to be owned by Boothe until paid for by Armstrong.

Shortly after the execution of the contract, Armstrong commenced to make fish reels in Boothe's plant and continued such manufacture until May 29th, 1899, and during this period Boothe delivered material for Armstrong's use in making said reels. Prior to April 1st, 1899, Armstrong notified Boothe that he should not purchase the

business, and in the following May Boothe sold it to another party. From November, 1898, to May, 1899, Boothe, at Armstrong's request, loaned Armstrong from time to time money to enable him to continue his work under the contract. It was expected that these loans would be repaid by work done in making reels and otherwise under the contract.

The transaction under the contract was completed before July 1st, 1899, and in the following January Boothe, as plaintiff, commenced this action against Armstrong, as defendant. The complaint alleged a loan by the plaintiff to the defendant of $4,000, and the bill of particulars specified the items of loan as above mentioned. The defendant included in his answer a counterclaim stating a cause of action against the plaintiff for goods sold and services rendered, and alleging the execution of the contract above mentioned, which is made a part of the answer, and that under and pursuant to its terms the defendant delivered goods and rendered services in the manufacture of the goods described in said contract, and that the plaintiff had not paid the defendant for the same. This counterclaim was pleaded as a second and third defense by way of set-off. The plaintiff's reply denies the allegation of indebtedness as stated in the counterclaim, and denies the allegation that the plaintiff has not paid the sums alleged to be due defendant.

Upon this state of the pleadings the cause was referred to a committee and partially heard, when, on July 14th, 1902, the plaintiff died. On February 5th, 1903, a stipulation in the cause was filed by Mary W. Boothe, executrix of the plaintiff, and the defendant, by which the action was revived and continued between said Mary W. Boothe, executrix, and said Armstrong, and by which it was agreed that the case should be proceeded with before the committee and the facts found by the committee who had been appointed and who had partially heard the same.

.. On July 6th, 1903, the following paper was filed with the clerk of the court:—

"Isaac J. Boothe (Mary W. Boothe, Executrix) vs. Sherman Armstrong. ⎰ New Haven County, Superior Court, July 6th, 1903.

Withdrawal of Action.

The above entitled action is hereby withdrawn.

Williams & Harriman,

Attorneys for Plaintiff."

Thereupon, on September 3d, the defendant filed a motion asking (for the reasons stated, including the statement of the defendant's answer and counterclaim) that the case be restored to the docket. To this motion the plaintiff, claiming to appear specially for the purpose of objecting to the jurisdiction of the court, demurred, on the ground that the court had no jurisdiction to hear and determine the motion. On November 27th, 1903, the cause was reserved for the advice of this court as to what judgment should be rendered. This court advised the Superior Court to overrule the demurrer to the motion. The following minute appears upon the docket: "Case restored to the docket in accordance with the advice of the Supreme Court of Errors, March 18th [1904]." On May 4th, 1904, the plaintiff filed in court a written motion "that the entire case be restored to the docket"; upon this paper was indorsed the following: "The within motion to restore case to docket is granted. June 24th, 1904. R. Wheeler, J."

Thereupon the parties appeared before the committee and completed the hearing before him upon the issues settled by the pleadings as they stood at the time the attempt to withdraw the action was made.

Upon the committee's report various proceedings were had, which resulted in the filing of a "substituted report" on March 6th, 1907. In this report the committee found that the amount loaned by the plaintiff to defendant, as alleged in the complaint, was $3,775, which was $670 in excess of the indebtedness of the plaintiff to the defendant as proved, and therefore found that on July 1st, 1899, the

defendant was indebted to the plaintiff in the sum of $670, and that the plaintiff was entitled to recover that sum, with interest. It also appears from the findings in the report, that at the price named in the contract for fish reels, made in pursuance thereof, the contract price for finished reels made and delivered by the defendant in pursuance of the contract (together with $402, value of work in connection therewith), amounted to $3,355.15; that the value of material, stock and unfinished parts of reels on hand and delivered by defendant to plaintiff upon completion of the transactions under the contract, amounted to $2,977.50; that these two last-mentioned items amounted to $6,332.65; that the cost price of the material furnished by the plaintiff and used by the defendant for the construction of the reels amounted to $3,227.65, and that the amount due from the plaintiff to the defendant, upon the defendant's cause of action as stated in the counterclaim and proved upon the hearing, was $3,105 (being the difference between $6,332.65 and $3,227.65).

On March 13th, 1907, the defendant filed a written motion that judgment be rendered in his favor for $6,332.65, stating therein as the claimed grounds for his motion: (1) that it appeared from the committee's report that $6,332.65 was the amount found due the defendant upon the issues raised by the defendant's counterclaim; (2) that it appeared by the record that on July 6th, 1903, the plaintiff withdrew the action, and therefore the court was without jurisdiction to render any judgment for the plaintiff; (3) that the amount found due the plaintiff for money loaned could not be set off against the amount found due the defendant, because no set-off was pleaded by the plaintiff; (4) that for the same reason the credit of $3,227.65 for material furnished by the plaintiff to the defendant could not be set off against the amount found due to the defendant; and (5) furthermore, a judgment by the court based on the allowance of this credit of $3,227.65 would be founded upon facts not pleaded nor in issue.

On April 3d, 1907, the court accepted the report and

rendered judgment for the plaintiff to recover $670, with interest.

The reasons for appeal are based upon the claims stated in the defendant's motion for judgment, and substantially state in different forms two claimed errors as appearing on the face of the record: first, error in granting the plaintiff's motion to restore the entire case to the docket; second, error in rendering judgment based upon a fact not alleged, to wit, the indebtedness of defendant for $3,227.65 for material furnished by plaintiff.

*Robert L. Munger*, for the appellant (defendant).

*Edward A. Harriman*, for the appellee (plaintiff).

HAMERSLEY, J. It was one object of the Practice Act to enable the parties to an action to finally settle, so far as the same can conveniently be done, all their controversies in one civil action, by permitting the plaintiff to state in his complaint the causes of action he may have against the defendant, and the defendant to include in his answer a counterclaim stating the causes of action he may have against the plaintiff. The Act gives certain rules for determining when distinct causes of action between the parties cannot be conveniently settled in one civil action, and, subject to these rules, vests in the trial court full power to determine in each civil action the question of convenience. The court may direct that one or more of the distinct causes of action may be expunged from the complaint or answer, or that they all be heard together, or may order separate trials of any of them; it may authorize or order additional parties, plaintiff or defendant, and that parties misjoined may be dropped at any stage of the cause, as it deems the interests of justice require; it may direct any other person to be substituted for the plaintiff or added as plaintiff, when the action has by mistake been commenced in the name of the wrong person, and no change in parties made by order of court shall impair any previous attachment of the estate of any person remaining a defendant in the ac-

tion; it may order the parties to state their grounds of claim or defense more certainly, and if the pleadings do not sufficiently define the issues may direct the parties to prepare other issues, and, if the parties differ, such issues shall be settled by the court.

In view of this purpose of the Practice Act and of the plenary powers vested in the court for its effective execution, we think that in this case it does not appear upon the face of the record that the trial court acted without jurisdiction in permitting the parties to settle all their controversies in one civil action.

It appears by the record that the plaintiff had a disputed claim against the defendant for money loaned, and the defendànt had a disputed claim against the plaintiff for goods sold and services rendered, and that these two controversies were properly included in one civil action pending before the Superior Court; the former by statement of the plaintiff in the complaint, and the latter by statement of the defendant in the answer. The plaintiff attempted to take this action and the parties out of court, by filing with the clerk a certificate stating, in effect, that the action entitled Boothe v. Armstrong, pending in the Superior Court, "is hereby withdrawn." Under the common-law procedure an action and the parties might thus be taken out of court. The plaintiff, in a form of action authorized for the enforcement of his claim, had ordinarily complete control of that action before its merits had in some way been passed upon. Under the Practice Act, the plaintiff's attempt, by filing a certificate of withdrawal, to take this particular action and the parties out of court, was ineffectual. This civil action included causes of action in favor of both plaintiff and defendant, and neither had complete control of the action. It must remain pending so long as either insists upon its disposition by the court. The plaintiff has the right to "withdraw from the cognizance of the court his own cause of action" as stated in the complaint, and this is the only effect that can be given to his attempt to withdraw the civil action, which included causes of ac-

tion both in his own favor and in favor of the defendant; and so we held when this case was before us upon the legal effect of this attempted withdrawal. 76 Conn. 530, 57 Atl. 173.

Whether the Superior Court and the parties properly treated the paper filed by the plaintiff, which was a mere nullity for the purpose for which it was filed (viz. a withdrawal of the entire action), as nevertheless effective for the purpose of withdrawing or striking out the cause of action stated in the complaint, need not now be discussed. The plaintiff had the right to do this, although he could not withdraw the pending civil action.

Assuming that he voluntarily did this, the court still had the power under the Practice Act to permit this cause of action—whether it was one of several or the only one stated in the complaint, or one which had not before been stated at all—to be stated and disposed of in the pending action. There is no settled practice as to the mode of permitting the plaintiff who, in an action which comprised causes of action both in his favor and in favor of the defendant, has voluntarily withdrawn the only cause of action stated in his complaint, to subsequently include that controversy in the pending action. Since the changes made by the Practice Act in the scope of a civil action, this question of practice, so far as we know, has not arisen. We are not aware that the case has ever before arisen where, under such circumstances, the plaintiff has voluntarily withdrawn the only cause of action stated in his complaint; but the court clearly has power to permit a cause of action so withdrawn to be subsequently stated, either in the complaint or in the reply to the counterclaim contained in the defendant's answer, which then serves the function of a complaint. The exercise of this power may be subject to limitations somewhat analogous to those regulating the allowance of amendments. In general, that mode of procedure, in a novel situation, which substantially accomplishes the lawful result in the most direct and simple manner would be the better practice.

VOL. LXXX—15

In the present case the court, for the purpose of allowing the parties to settle all their controversies in the pending action, permitted the plaintiff to restate in his complaint a cause of action he had previously abandoned. Under the Practice Act it was within the jurisdiction of the court to allow this cause of action to be included in the pending action. Whether the mode adopted for the exercise of that power is the most desirable one, and whether, under all the facts and circumstances before the court at the hearing upon the plaintiff's motion (which was in effect a motion for leave to include this cause of action in the pending civil action), the motion in this particular instance should have been denied, are questions not presented by this appeal. The only question before us is that of jurisdiction. The court had jurisdiction to hear and allow or disallow the motion.

These considerations dispose of all material assignments of error specified in the appeal, except the one which claims that the court erred in allowing the plaintiff credits to the amount of $3,227.65 for materials furnished the defendant by the plaintiff for use by the defendant in the manufacture of goods in pursuance of the contract.

The defendant's claim, that the legal operation of allowing these credits is to make the judgment one based on facts not alleged, is unfounded. The written contract was the inducement to all the transactions upon which the defendant based his claim of indebtedness, as stated in his counterclaim, and is made a part of his counterclaim. The defendant in effect alleges that he delivered goods and rendered services in the manufacture of goods described in that contract, under and pursuant to its terms, and delivered the stock, etc., on hand at the close of the transactions, under the contract. By the terms of the contract the goods made and delivered by the defendant are to be made of material furnished by the plaintiff at its cost price, which must be credited to the plaintiff and remain his property until paid for. The amount due the defendant for goods made by him pursuant to the contract, depended

upon the amount due the plaintiff for the cost price of his material which went into the goods made, and which, as well as that furnished for this purpose but not so used, belonged to the plaintiff until paid for. In denying the defendant's allegation of the amount due him, the plaintiff put in issue the amount of credits due him for his material furnished for making the goods pursuant to the contract. Under the peculiar circumstances of this case the committee was justified in finding the amount due the defendant for goods made under the contract, and the judgment rendered is correct. Apparently this is the view of the law taken by the parties themselves at the hearing before the committee.

There is no error in the judgment of the Superior Court.

In this opinion the other judges concurred.