JOSEPH W. STANTON AND ANOTHER *vs.* JAMES H. EMBRY, ADMINISTRATOR.

A court of equity will interfere to restrain by injunction the use of an advantage gained in a court of law, which must necessarily make that court an instrument of injustice, in all cases where such advantage has been gained by the fraud of the other party, or by accident or mistake.

This principle applied to a case where an administrator obtained a judgment in a foreign jurisdiction, without any intentional fraud, which it would have been a fraud for the intestate to have taken if living, by reason of a special agreement with the defendants in view of which they acted in the suit.

A legal remedy which a party is compelled to go into a foreign jurisdiction to avail himself of, is not to be regarded as an adequate legal remedy, and will not deprive our own courts of equitable jurisdiction in the matter.

BILL IN EQUITY for an injunction against further proceedings in an action at law upon a judgment obtained against the petitioners by the respondent as administrator of the estate of one Atkinson; brought to the Superior Court in New London County. The case was before this court at a former term, (*ante* p. 65,) upon a demurrer to the bill. The court held the bill to be sufficient, and the case was referred by the Superior Court to a committee, who made a finding of the facts, and upon these facts the case was reserved for the advice of this court.

*L. F. S. Foster* and *A. Brandegee*, for the petitioners.

*R. D. Hubbard* and *D. Chadwick*, with whom was *A. L. Merriman*, for the respondent.

PARDEE, J. In 1862 R. J. Atkinson, the respondent's decedent, made a contract with the petitioners whereby he bound himself to assist them in the enforcement of a claim against the United States, and accept in full compensation for such service five per cent. of the amount allowed. He completed his undertaking, the sum of $45,925.17 was allowed, and he became entitled to receive $2,296.25. This sum remained unpaid at his death, which occurred on February 25th, 1871. The respondent having been duly appointed

administrator upon his estate, demanded of the petitioners, residents in this state, payment of this debt, stating it as follows:—

"J. W. Stanton and W. L. Palmer, to estate of R. J. Atkinson, deceased, Dr.

"To amount due for professional services of R. J. Atkinson in prosecution of claim against the United States for the services of the Steamer Anglo American from May 22d to July 28th, 1862, and for services of Steamer Saint Charles from April 27th to July 28th, 1862, being five per cent. of amount allowed by the United States.

"Amount allowed by the United States,    $45,925.17
"Amount due estate,                           2,296.25 "

This sum the petitioners refused to pay in full, claiming that they had overpaid Atkinson for other services to the extent of $1,534.36. They insisted upon their right to off-set this sum, offering to pay the balance. Thereupon the respondent instituted a suit against them in the Superior Court for the County of New London in this state, in November, 1871. The declaration contained a special count for a commission of five per cent.; also general counts upon a *quantum meruit* demanding $10,000. He withdrew this suit in March, 1872, having in the previous January instituted another in the Supreme Court of the District of Columbia, in which the bill of particulars filed was as follows:—

"J. W. Stanton and W. L. Palmer, to R. J. Atkinson, Dr.

"1870, Feb. 3d. To services in prosecution of your claim against the United States before the third auditor and second comptroller from the year 1865 to date,                $10,000

"To subsequent services in same case, before the Secretary of the Treasury and other officials, by said Atkinson and by plaintiff as administrator, included in the above."

Upon the trial of this cause the respondent offered evidence in support of the count upon the *quantum meruit*, and recovered a judgment for $9,185.18, with interest and costs; and, having brought an action of debt thereon in this jurisdiction, this petition asks for a perpetual injunction against the enforcement thereof to a greater amount than for $2,296.25.

It was referred to a committee for a finding of facts; upon the report the advice of this court is asked as to the judgment to be rendered.

In *Pierce* v. *Olney*, 20 Conn., 544, the respondent having instituted a suit in New York against the petitioner, a resident of Connecticut, counsel of the former informed the latter that nothing would be done in relation to it until further notice to him. Resting upon this he omitted to enter an appearance. Without such further notice to the petitioner the respondent took a judgment against him, and brought his action of debt thereon in Connecticut. The petitioner asked for and obtained a perpetual injunction against the prosecution of that action. The court said:—"The object of injunctions to stay proceedings at law, is to prevent injustice by an unfair use of the process of a court. They are granted on the ground of the existence of facts not amounting to a defence to the proceeding enjoined against, but of which courts of equity have jurisdiction, and which renders it against conscience that the party enjoined should be permitted to proceed in the cause. It is well settled that this jurisdiction will be exercised whenever a party having a good defence to an action at law has had no opportunity to make it, or has been prevented by the fraud or improper management of the other party from making it, and by reason thereof a judgment has been obtained which it is against conscience to enforce. Indeed, this falls directly within, and is but an illustration of, the general rule, that equity will interfere to restrain the use of an advantage gained in a court of ordinary jurisdiction, which must necessarily make that court an instrument of injustice, in all cases where such advantage has been gained by the fraud, accident or mistake, of the opposite party."

We think that the case at bar falls within the principle thus stated. The petitioners of course had from the beginning full knowledge of the terms of their contract with the respondent's decedent; knowledge that under it he could not recover a judgment for a greater sum than five per cent. upon the amount allowed by the United States, unless he

should either suggest a falsehood to, or withhold the truth from, the court rendering it. So far as the record shows, no act or word gave any intimation that he considered himself entitled to or intended to claim more. Nor have they ever had any reason for believing that he made any charge or memorandum embodying a different claim; for, the respondent, as administrator, presumptively obtaining his information from the papers of the decedent, stated to them that their indebtedness was for five per cent., without suggesting that it might possibly be greater or that he either would or could in any contingency enlarge it. They might well, and in fact did, regard this as equivalent to a declaration that those papers furnished positive evidence that there was a contract calling for payment at that rate. It is true that the *ad damnum* clause in his writ named the sum of $10,000; but in view of the custom of pleaders in framing that clause we cannot say that it was calculated to, and it is found that in fact it did not, remove from the petitioners' minds the effect produced by the precise and explicit statement of the bill of particulars. It is true too that in the suit instituted in the District of Columbia the same clause named the same sum and the bill of particulars repeated it. But the respondent gave to the petitioners no information other than that conveyed by these clauses and the bill, that he had discovered any evidence tending to show, or had any reason for believing, the debt to be for a greater sum than that originally named.

The finding is that " at the time of the trial of this case at Washington neither Mr. Stanton nor Mr. Palmer was present in court. Mr. Palmer was in Stonington; his attendance might have been secured by reasonable diligence, if such attendance had been deemed very important. Mr. Stanton was ill at his hotel in Washington; too ill to attend the trial. His counsel asked for a postponement on that account; but no affidavit was offered in support of the motion and it was denied. The petitioners' counsel appears to have been content to proceed with the trial in the absence of his clients. He had full, and, as it turned out, undue confidence in the legal defences, which appear by the record to have been set

up at the trial, and took it for granted that in no event could more be recovered than $2,296.25. It appears that for several reasons the attention of the petitioners was not alive to the importance of being prepared at the trial in Washington with the proof of the special agreement which the letters furnished; because the petitioners took it for granted that the full extent of the plaintiff's claim at the trial would be $2,296.25, that being the amount of the claim presented through Mr. Pratt; and it did not occur to them that a larger amount might be claimed under the *quantum meruit* count."

Thus the respondent unintentionally gave them every reason for thinking that he did not believe that he had any right to to ask for a judgment for a larger sum, and of course that he would not; he unintentionally led them to believe, and act upon the belief, that the only loss which could possibly ensue from either a partial or a total omission of preparation for the trial would be the sum of $2,296.25. Of this they had full warning, and of this they are not now to be heard to complain. So much of the judgment as is in excess of this was obtained because the significant words, followed by the no less significant silence of the respondent as to any change either in his information or intention, were calculated to and did in fact produce the belief on their part that no more would in any event be asked of the court than to assess the damages according to the terms of the contract; that, as there was no place for, so no offer would be made of evidence as to the value of the decedent's services. In effect, as to such excess they were detained from court by the respondent's action; as to it, the principle of *Pierce* v. *Olney*, supra, applies. It is true that knowledge came to them during the trial that judgment would be asked upon a *quantum meruit*. But the cause of their want of preparation for making proof of the contract was the cause of their want of adequate legal reason for delay. It is found that the decedent "while living had full knowledge that the amount due him was but $2,296.25 on a special contract for that amount, and he if living could not with good conscience have presented a claim for a greater amount. Mr. Embry, the administrator, knew that Messrs.

Stanton and Palmer claimed a special contract, and was willing before trial was brought to settle on that basis; but his claim in court on a *quantum meruit* was not on his part an intentional *suggestio falsi.* He did not know that the claim was unfounded; the full proof of the special agreement was not in his possession, and had not been fully brought to his knowledge."

Thus it is made certain that the decedent, if living and enforcing his claim, would have had no right to ask for or take a judgment for more than five per cent.; if he had offered, either in the presence or absence of the petitioners, evidence in support of the count upon a *quantum meruit*, it would have been the suggestion of a falsehood, for by his contract he had barred himself from making that claim in any form or for any reason. Neither in the forum of law, nor in that of equity or conscience, could he have asked for or received or retained the judgment which was rendered in his name upon the motion of his representative. The case stands as if the decedent had obtained the judgment and now stood in person in this court asking its aid in enforcing it. The administrator is no stronger in law or equity or morals. The fact that the latter failed to come to the knowledge of the truth as to the debt and in ignorance misled the court into the rendition of a wrongful judgment, does not destroy the right of the petitioners to have the wrong corrected now that it is pointed out. The court in this jurisdiction knowing the truth cannot be made the instrument of injustice. For the decedent to have obtained this judgment would have been fraud; for he had all knowledge. He could not have used the forms of law in any court for the enforcement of it; equity would bar him in every jurisdiction. As the respondent had not "full knowledge" that the contract was as he originally stated it to be, for him to have obtained it was unintentionally to have moved the court to an act of injustice. That act cannot be made to rest upon his ignorance; the judgment still remains without foundation.

To grant this petition is not to put any restriction upon or in any manner to interfere with the court of the District of

Columbia in the exercise of its powers. The order will go only to the individual. The judgment will stand, but a court of equity having been informed of certain equitable circumstances which show that it is against conscience that the petitioners should be compelled to pay it in full, will not permit the respondent to avail himself of a court of law in this jurisdiction for the purpose of enforcing it to a greater amount than $2,296.25. This measure of relief is quite distinct from and is in addition to their right to have gone or to go into the District of Columbia and ask that the judgment should be set aside and a new trial granted.

It is claimed by the counsel for the respondent that this right to go into the court which rendered the judgment and ask for a new trial, a remedy which it is claimed is open to the petitioners under the laws of the District of Columbia, is an adequate legal remedy, and that this court can not assume equitable jurisdiction over the matter while the petitioners have this remedy. But no legal remedy can be considered as adequate which a party is compelled to go into a foreign jurisdiction to avail himself of. It must be a remedy which our own courts can apply.

The Superior Court is advised to grant the prayer of the petitioners upon payment by them of the sum of $2,296.25 with interest from March 16th, 1871.

In this opinion the other judges concurred; Judge BEARDS-LEY of the Superior Court sitting in the place of Judge GRANGER who was absent.