## WARK COMPANY vs. THE BEACH HOTEL CORPORATION ET ALS.

Third Judicial District, New Haven, January Term, 1931.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued January 27th—decided April 6th, 1931.

*Joseph G. Shapiro,* with whom were *Harry A. Goldstein* and *David E. Birnbaum,* and, on the brief, *Charles S. Brody,* for the plaintiff.

*Paul L. Miller,* for the defendant J. William Hope, receiver.

*William H. Comley,* for the defendant Francis E. Beach.

*Samuel F. Beardsley* appeared for the defendant The Beach Hotel Corporation but did not file a brief nor argue the cause.

MALTBIE, C. J. This action is brought to foreclose a mechanic's lien and comes to us upon a reservation. For the solution of the questions propounded to us we do not need to consider many of the facts in the stipulation and shall confine ourselves to those pertinent to the particular issue before us.

On May 26th, 1927, Francis E. Beach owned the land described in the certificate of lien and on that day he entered into a contract with the Development Service Corporation, in which provisions were made for financing the erection of a hotel building on the premises and the organization of a corporation to lease the property and operate the hotel. The defendant the Beach Hotel Corporation was thereupon organized. On September 23d, 1927, the Hotel Corporation entered into a contract with the plaintiff for the construction of the hotel for the price of $662,000. On the same day the plaintiff entered into a contract with the Development Corporation which recited the making of the construction contract just referred to and contained a subscription for seventeen hundred and fifty shares of the preferred stock of the Hotel

Corporation of a par value of $100 each, together with an equal number of shares of the common stock of a par value of $5, ten per cent of the price to be paid upon the making of the construction contract and the balance in instalments thereafter. This contract was indorsed "Approved and Agreed to, Beach Hotel Corporation, by Francis E. Beach, Pres." A certificate for this stock was sent to the plaintiff on March 26th, 1929. The plaintiff completed the construction of the hotel on May 6th, 1929, but it has never been paid a considerable portion of the consideration stated in the contract nor, on the other hand, has it paid anything on its subscription to the stock of the Hotel Corporation except the first payment of ten per cent. We are asked, first, whether the plaintiff is obliged to credit the defendant with the par value of the stock sent to it by the Hotel Corporation upon the balance due under the building contract; and, secondly, whether the mechanic's lien claimed by the plaintiff is void as overstating the amount due it under the building contract, or, if the court finds that a deduction should be made on account of the stock subscription, whether the lien is valid for the balance of the amount due under that contract.

There is no claim made of a right to a set off or recoupment of any amount due from the plaintiff upon its contract to purchase the stock against the amount due it under the building contract, but the contention now advanced is succinctly stated in the answers of the defendants Beach and the Beach Hotel Corporation, that the payment of the amount due from the plaintiff upon the subscription for the stock was "to be made in the form of credits upon the contract price" for the construction of the hotel. Whether or not this is so must be determined from the intent of

the parties as deducible from the various instruments executed by them, and particularly from the construction contract and the plaintiff's contract for the subscription to the stock of the Hotel Corporation. These two contracts were executed the same day. The former is in the standard form for such contracts. It provides that "the owner shall pay the contractor for the performance of the contract, subject to additions and deductions provided therein, in current funds" the price agreed upon for the work and it also provides for monthly progress payments upon estimates made by the architect and for a final payment upon a certificate of the architect thirty days after substantial completion of the work. The contract contains nothing in the way of "additions or deductions" which has any relation to amounts to become due from the plaintiff upon its stock subscription. The contract having to do with that subscription, between the plaintiff and the Development Company, is expressed to be collateral to the building contract and dependent upon its execution and delivery. It recites that the plaintiff and the Hotel Corporation have executed and delivered to each other the construction contract "for the consideration therein named," and that a part of that consideration is to be provided by the sale of seventeen hundred and fifty shares of the preferred stock of the Hotel Corporation of a par value of $100. It then contains a subscription by the plaintiff for that number of shares of preferred stock, with an equal quantity of shares of common stock of a par value of $5, payment to be made as follows: Ten per cent in cash at the delivery of the building contract and the balance thereafter in instalments, "as called for by the Development Company," not oftener than once a month, each instalment not to be more than two

sevenths of the amount due the plaintiff each month on the architect's certificate under the building contract, to the end that the entire subscription should be payable on or before the date when the plaintiff would receive the final architect's certificate under the building contract. Then follows an agreement by the Development Company to maintain and continue a sales organization to sell at par and accrued dividends the shares subscribed for by the plaintiff, the terms of such sales to be so arranged that full payment would be made, without deduction for commissions or other charges, at or before the date set for the final payment by the plaintiff upon its subscription, and all cash payments received upon such sales to be credited against the current and next succeeding subscription instalments due from the plaintiff. The sales organization was to be left free to "sell the balance of the authorized issue of preferred and common stock of said Beach Hotel Corporation provided, however, the first seventeen hundred and fifty shares of preferred and common stock sold by it shall be the stock hereby subscribed for by the contractor." The contract expressly states that the seventeen hundred and fifty shares subscribed for are a part of the total authorized issue of five thousand shares of preferred stock of the corporation. A week later the Development Company and the Hotel Company entered into a contract which recites that the Hotel Company is erecting the hotel and desires to sell its stock to raise funds therefor and that the Development Company has an organization equipped to sell the stock and the Hotel Company desires to employ it for that purpose; and it then goes on to provide that the Development Company will undertake a sales campaign to sell as much as possible of the five thousand shares of preferred stock of the

company, with the accompanying shares of common stock, and fixes the terms of its employment for this purpose.

We are not called upon to determine the meaning or adjudicate the validity of these contracts in most of their aspects, because there are certain obvious considerations which suffice to determine the particular issue before us. When we look at the terms of the contracts we are at once struck by the fact that in the very places where one would expect to find it indicated, if the parties intended that any amount due from the plaintiff upon the stock subscription should be credited upon the amounts due to it under the building contract, there is no suggestion of that kind, but rather the contrary. The building contract merely fixes the method by which the amounts due the plaintiff under it are to be determined and provides for their payment "in current funds." The stock subscription contract recites that a part of the consideration named in that contract is to be provided by the sale of the stock for which the plaintiff is subscribing, but it does not in any way indicate that any amounts due upon that subscription are to be credited as such upon the amount due the plaintiff under the building contract. Indeed, when the plaintiff's stock subscription contract is compared with the contract for the disposal of the Hotel Corporation stock made by the Hotel Corporation with the Development Company a week later but drawn so as to include the entire authorized preferred stock of the Hotel Company and so that subscribed for by the plaintiff, and when the obligation assumed by the Development Company to dispose of the shares subscribed for by the plaintiff to others, who would thereby assume any part of the subscription price not paid in, is considered, it is difficult to see any

relationship between the plaintiff and the Hotel Company growing out of the stock subscription contract other than the ordinary one inherent in such a subscription, to pay the Hotel Company the par value of the stock, regardless of any counter obligation of that company to it.

There are other considerations which substantiate such a conclusion. In order to permit a credit by the Hotel Company upon the sums due the plaintiff under the building contract, there must have been at the time those sums became payable a definite amount due upon the subscription, or at least an obligation which it lay in the power of the Hotel Company to make definite. But under the terms of the stock subscription agreement the obligation of the plaintiff was, both as to the time when any sum became payable and as to the amount to be paid, dependent upon a call to be made by the Development Company. Upon its subscription the plaintiff became obligated to pay the Hotel Company the par value of the stock for which it subscribed, as it might be called for; *Webb* v. *Moeller*, 87 Conn. 138, 140, 87 Atl. 277; but such calls are made by the directors of the corporation. General Statutes, § 3413. The plaintiff could, of course, at any time, at least with the consent of the Hotel Company, pay in upon its subscription the whole or any part of the amount due; 1 Cook on Corporations (8th Ed) § 106; and it could therefore agree with any person that it would, subject to statute or charter limitations and to principles of public policy, make payment upon the subscription at certain times and in certain amounts. The call referred to in the agreement was obviously not the call which might be made by the directors of the corporation, but a demand to be made by the Development Company.

It might or might not be contemporaneous with the time when monthly payments became due the plaintiff under the building contract. Within the limitations set, the amount of any call was determinable by the Development Company, except that the obligation of the plaintiff was subject to reduction or entire cancellation by credits to be made to it upon a sale by the Development Company of any of the stock for which the plaintiff had subscribed. The agreement concerning the subscription was then one made primarily with the Development Company and the indorsement by the Hotel Company, "Approved and Agreed to," would go no farther than to evidence an acceptance by it of the provisions of the contract so far as they affected it. We have then one contract under which certain payments were to become due to the plaintiff at definite times as it proceeded to erect the hotel and another by which payments might become due to the Hotel Company from the plaintiff, in amounts and at times to be determined by a third party, or might perhaps never become payable at all because of the credits to be made upon the sale of the stock by the Development Company under its contract. The most that could be claimed is that the plaintiff and the Hotel Company intended that any sums which under the subscription contract might become due to the latter contemporaneously with an instalment payable to the plaintiff were to be credited upon that instalment, if called for, and to the amount called for, by the Development Company. But even if we could adopt that view, it would not be possible to make any credits in the present action because, so far as the record shows, no demand was ever made by the Development Company for the payment of any sum by the plaintiff. The conclusion necessarily follows that the indebted-

ness of the Hotel Company to the plaintiff under its building contract and the indebtedness of the plaintiff to the Hotel Company, if any, under the stock subscription contract, represent obligations independent of each other and there is no basis upon which in this action, at least, the latter could be applied as a credit in reduction of the former. This conclusion is substantiated by a letter sent by the secretary of the Hotel Company to the plaintiff wherein, speaking of the agreement between the plaintiff and the Development Company as to the stock subscription, he says: "So far as the Beach Hotel Corporation is concerned, it is simply a subscription on the part of the Wark Company for seventeen hundred and fifty units of stock." We do not consider further the rights of the various parties to the agreements, as it is not necessary to do so in order to answer the questions propounded, and the pleadings afford no basis for an adjudication as to them.

To the first question we answer, No. It follows that the certificate of lien truly stated the amount of the indebtedness of the Hotel Company to the plaintiff, and to the second question we answer that there is a valid lien for the amount of that indebtedness.

No costs will be taxed in this court to either party.

In this opinion the other judges concurred.