FRANCIS E. BEACH ET AL. *vs.* THE BEACH HOTEL
CORPORATION (IN RE RECEIVERSHIP).

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

446 

Argued June 14th—decided October 24th, 1933.

 

*Joseph G. Shapiro* and *Yale L. Schekter* of Pennsylvania, for the appellant (Wark Company).

*Paul L. Miller,* with whom, on the brief, was *William H. Comley,* for the appellee (the receiver).

HAINES, J. Many of the facts leading up to this action are recited in the Reports of this court, Vol. 113, pp. 119 and 716, and Vol. 115, p. 708. The plaintiff Beach contracted with the Development Service Corporation to erect and finance a hotel upon his property in the city of Bridgeport. Pursuant thereto the defendant corporation was organized under the laws of this State; and on September 23d, 1927, the Service Corporation made a contract with the Wark Company—a Pennslyvania corporation engaged in construction work—providing that the latter, upon the execution of a contract by it with the defendant corporation, would subscribe for seventeen hundred and fifty shares of the preferred and a like number of shares of the common stock of the defendant Hotel Corporation; and that the first payment of ten per cent on the subscription—being $18,375—should be made by the Wark Company in cash. This was in fact paid. The balance was to be paid in instalments

as called for by the Service Corporation not oftener than once each month, and no payment to be required for more than two-sevenths of the amount of the architects' certificate of approval of the construction work—the whole subscription to be paid on or before the receipt of the architects' final certificate. No calls were ever made until that of the receiver in this action. Further, it was agreed that the Service Corporation would maintain a sales organization for the sale of the capital stock, and also to sell the stock subscribed for by the Wark Company for the account of the latter with the purpose of eventually reimbursing that company in cash for the full amount of its subscription. The Service Corporation thereafter sold seven hundred and thirty-one shares of preferred and a like amount of the common stock to other parties and the full amount of these subscriptions was collected and turned over to the Hotel Corporation.

The contract also contained the following language: "3. As and when cash payments are received from subscribers to said preferred and common stock so obtained by such sales organization, the amounts so received shall be credited against the current or next succeeding subscription instalments payable by the contractor. 4. The sales organization shall be at liberty to sell the balance of the authorized issue of preferred and common stock of said Beach Hotel Corporation provided, however, that the first 1750 shares of preferred and common stock sold by it shall be the stock hereby subscribed for by the contractor."

It was further provided that "this agreement is collateral to the building contract to be entered into by the contractor and the Beach Hotel Corporation." It was signed and sealed by the Service Corporation and the Wark Company and the following endorsement made thereon: "Approved and agreed to, Beach

Hotel Corporation, by Francis E. Beach, Pres.," and the seal of the corporation was attached.

The Wark Company completed the erection of the hotel in May, 1929, in accordance with its contract, and has received on account $428,155.11, leaving a balance due, with interest, of $324,741.64. As part of the plan for financing the enterprise, a first mortgage of $500,000 was placed upon the property. Thereafter both the plaintiff Beach and the defendant Hotel Corporation became insolvent and in the action now before us a receiver was appointed for the latter. The Wark Company filed a mechanic's lien for the $324,-741.64, and in an action to foreclose that lien the amount was contested by the receiver, who sought to set off against it the balance of ninety per cent—or $165,375—due on the stock subscription of the Wark Company. Upon a reservation, however, this court held that the building and subscription contracts were "obligations independent of each other and there is no basis upon which, in this action at least, the latter could be applied as a credit in reduction of the former." The demand of the Wark Company was found correct and allowed in full and a foreclosure judgment in favor of the Wark Company granted. *Wark Co.* v. *Beach Hotel Corporation,* 113 Conn. 119, 127, 154 Atl. 252.

Upon the foreclosure of the first mortgage, however, to which the mechanic's lien was subordinate, neither the Wark Company nor any other party redeemed and the title to the property passed to the mortgagee. The Wark Company then filed the adjudicated claim of $324,714.64 against the receiver in the present receivership action, and the court, over objection of the Wark Company, permitted the receiver to file a cross-complaint against the Wark Company for the balance claimed to be due on the latter's

stock subscription. Its motion to strike out this cross-complaint having been overruled, the Wark Company filed an appeal to this court, but it was disallowed, as not based upon a final judgment. *Beach* v. *Beach Hotel Corporation,* 115 Conn. 708, 709, 163 Atl. 416.

Issue was joined, and a motion of the Wark Company for a jury trial being overruled, the court, after hearing, gave judgment against the Wark Company in favor of the receiver for the ninety per cent due on the stock subscription—$165,375—and interest. The appellant—Wark Company—in brief and argument makes five main claims in support of its appeal from that judgment: (1) That it was error to permit the cross-complaint to be filed in this receivership action; (2) that the appellant was entitled to a jury trial; (3) that the opinion in 113 Conn. 119, above referred to, does not deny the Wark Company the right to have its claim on the construction contract credited against the amount due, if any, upon its subscription contract; (4) that the entire ninety per cent balance on the subscription contract was in fact and law paid by crediting the balance of the construction account against it under an oral agreement made by authorized representatives of the two corporations while the Hotel Corporation was yet solvent, and (5) that, in any event, the Wark Company is entitled—under its contract with the Service Corporation—to have the proceeds of stock sold thereafter by the latter—$76,745—credited on its subscription indebtedness.

As to the first claim, it is contended by the Wark Company that it was not a party to the receivership action and that the subject-matter of the cross-complaint was not so related to the controversy in that action that it was necessary for the court to consider it in order to fully determine the rights of the parties in

the original controversy, within the requirements of *Harral* v. *Leverty*, 50 Conn. 46, 63, 64; *Downing* v. *Wilcox*, 84 Conn. 437, 440, 80 Atl. 288; Practice Book, p. 286, § 188.

This proceeding for the appointment of a receiver to take possession of all the assets and for the dissolution of the Hotel Corporation, was an action in equity. *Barber* v. *International Co. of Mexico*, 73 Conn. 587, 48 Atl. 758. It was brought to the Superior Court which has plenary jurisdiction, both legal and equitable. The Wark Company—claiming to be a creditor of the Hotel Corporation—voluntarily entered an appearance in the receivership action by counsel and thereafter filed its claim for $324,741.64. The record shows, however, that, in the claim itself, it is explained in detail in connection therewith, that the amount due as it appeared on the books of the Hotel Corporation was a different amount; that there was a question as to a claimed agreement regarding the payment of the Wark Company's stock subscription, and a further question as to the right of the claimant to interest on the amount due it, and it was suggested that these questions must be determined in order to fix the sum, if any, due the Wark Company. The record further shows that upon a claim being made in the original action, by the plaintiff Beach, for certain moneys in the hands of the receiver—proceeds of the sale of hotel furniture which he claimed to have owned—the Wark Company opposed the claim and, upon the granting of the demand, took an appeal as "defendant" and further contested the matter in this court. *Beach* v. *Beach Hotel Corporation*, 113 Conn. 716, 156 Atl. 865.

The Wark Company has been permitted to enter our courts for the purpose of establishing its rights under this receivership. It has not only filed its own

claim, but entered a general appearance and actively contested the claim of another in the trial court. It cannot now be heard to say that it is not a party to the action. It has brought itself within the ruling of *Receivers Middlesex Banking Co.* v. *Realty Investment Co.*, in 104 Conn. 206, 132 Atl. 300, wherein it is said: "Where the defendant, after his plea is overruled, seeks affirmative and distinctive relief beyond the scope of the issues presented upon the complaint, he must be held to have subjected himself voluntarily to the court's jurisdiction." (p. 214 and cases cited.) We added: "It would be obviously unjust to permit a party who has interposed an objection to the jurisdiction of the court over his person to avail himself of the chance to obtain a favorable affirmative judgment against the plaintiff . . . and, at the same time, preserving his right to reverse any judgment which might be rendered against him."

The entire ninety per cent unpaid subscription of the Wark Company was a part of the company's assets, since the full sum was found necessary to pay the corporate debts. 1 Purdy's Beach on Corporations, p. 261.

In this situation the receiver was permitted to file the so-called cross-complaint—equivalent, in effect, to a bill in equity ancillary to the receivership. Having acquired jurisdiction of the subject-matter and the parties, the court was free to exercise it, by itself deciding the matter in controversy or, in its discretion, submitting questions of fact therein to a jury or other tribunal for hearing and decision. *Bashford-Burmister Co.* v. *Aetna Indemnity Co.*, 93 Conn. 165, 105 Atl. 470; *Davis* v. *Holden,* 92 Conn. 96, 101 Atl. 485; *Links* v. *Connecticut River Banking Co.*, 66 Conn. 277, 33 Atl. 1003.

Plenary jurisdiction is vested in the court wherein

the receivership action is pending. "When a court exercising a jurisdiction in equity appoints a receiver of all the property of a corporation, the court assumes the administration of the estate; the possession of the receiver is the possession of the court; and the court itself holds and administers the estate, through the receiver as its officer, for the benefit of those whom the court shall ultimately adjudge to be entitled to it." *Porter* v. *Sabin,* 149 U. S. 473, 479, 13 Sup. Ct. 1008; *White* v. *Ewing,* 159 U. S. 36, 38, 39, 15 Sup. Ct. 1018; *Peck* v. *Elliott,* 79 Fed. 10; *Cunningham* v. *Cleveland,* 98 Fed. 657; *Eau Claire* v. *Payson,* 109 Fed. 676, 680; *Whelan* v. *Enterprise Transp. Co.,* 164 Fed. 95, 97.

When a court of equity obtains jurisdiction to determine the rights of the parties, it will retain it and give appropriate relief. *Middletown Savings Bank* v. *Bacharach,* 46 Conn. 513, 526. Upon equitable principles and in the spirit of our Practice Act, jurisdiction in equity once acquired is retained for the purpose of giving full relief concerning the subject-matter. *Andrew* v. *Babcock,* 63 Conn. 109, 124, 26 Atl. 715; *Alden* v. *Trubee,* 44 Conn. 455, 460. Since he who seeks equity must do equity, the Wark Company, pressing its claim against the receiver in this action, opened the door to the latter's defense by way of cross-complaint, it being germane to the matter in controversy. *State* v. *Kilburn,* 81 Conn. 9, 12, 69 Atl. 1028; *Hubley Mfg. & Supply Co.* v. *Ives,* 81 Conn. 244, 247, 70 Atl. 615; *Rowan* v. *Sharps' Rifle Mfg. Co.,* 29 Conn. 282, 330.

"It is now an established principle in our law of civil procedure that two suits shall not be brought for the determination of matters in controversy between the same parties, whether relating to legal or equitable rights, or to both, when such determination can be had as effectually and properly in one suit. . . . To this

end the law provides that all courts having jurisdiction at law and in equity, may 'administer legal and equitable rights, and apply legal and equitable remedies in favor of either party, in one and the same suit, so that legal and equitable rights of the parties may be enforced and protected in one action.' " *Welles* v. *Rhodes,* 59 Conn. 498, 503, 22 Atl. 286.

A failure to give the receiver a remedy in the present equity action would force him to resort to the courts of a foreign jurisdiction for relief. A remedy at law, to exclude equity jurisdiction, must be as complete and beneficial as the relief in equity. *Hodges* v. *Kowing,* 58 Conn. 12, 21, 18 Atl. 979; *Winestine* v. *Rose Cloak & Suit Co.,* 93 Conn. 633, 638, 107 Atl. 500. " ' Adequate remedy at law' means a remedy vested in the plaintiff, to which he may, at all times, resort, at his own option, fully and freely, without let or hindrance." *Wheeler* v. *Bedford,* 54 Conn. 244, 249, 7 Atl. 22; *Fitzgerald* v. *Merard Holding Co.,* 106 Conn. 475, 483, 138 Atl. 483. No legal remedy can be considered as adequate which the plaintiff must go into a foreign jurisdiction to avail himself of. It must be a remedy in our own courts. *Stanton* v. *Embry,* 46 Conn. 595, 601. We hold that there was no error in permitting the receiver to file the cross-complaint.

Whether the Wark Company was entitled as of right to a jury trial of the issues raised by the receiver's demand, raises a question upon which there is some conflict of authority. The *Peck* and *Cunningham* cases, *supra,* clearly implied that a trial by jury was a matter resting in the sound discretion of the court, and not demandable as a constitutional right, while the *Eau Claire* and *Whelan* cases, *supra,* held that the action to recover on a stock subscription being in the nature of an action at law, a jury trial was demandable as of right on the law side of the court.

We cannot concede that, in the present case, the issue raised by the ancillary bill was purely one at law. On the contrary, it has been clearly held in this court that a claim of this character made by a receiver, is an equitable one. The fund represented by unpaid stock subscriptions is one which is applicable to the payment of the claims of corporate creditors. It is in its nature essentially a trust fund for their benefit. *Crandall* v. *Lincoln,* 52 Conn. 73, 95; *Johnston* v. *Allis,* 71 Conn. 207, 217, 218, 41 Atl. 816; *Buck* v. *Ross,* 68 Conn. 29, 31, 35 Atl. 763; *Barber* v. *Morgan,* 89 Conn. 583, 589, 94 Atl. 984. The creditors of an insolvent corporation have no direct right of action against the subscribers, but this right is vested in the receiver for their benefit and it is an equitable rather than a legal right which he is now seeking to enforce. *Hollis* v. *Brierfield Coal & Iron Co.,* 150 U. S. 371, 383, 14 Sup. Ct. 127; 5 Pomeroy's Equity Jurisprudence, § 2319 *et seq.* Stockholders are liable on their unpaid subscriptions to the extent necessary to pay the corporate debts. Not the Wark Company alone, but all the creditors are equitably entitled to share in that fund. "It is in the power of a court of chancery to do more ample and complete justice to the parties interested, than can possibly be done in a court of law." *Ward* v. *Griswoldville Mfg. Co.,* 16 Conn. 593, 602; *Mann* v. *Cooke,* 20 Conn. 178, 187.

The Wark Company was not entitled as of right to a trial by jury, and the denial thereof was within the sound discretion of the court. General Statutes, §§ 5624, 5625; *Seeley* v. *Bridgeport,* 53 Conn. 1, 2, 22 Atl. 1017; *Meriden Savings Bank* v. *McCormack,* 79 Conn. 260, 262, 64 Atl. 338; *Doris* v. *McFarland,* 113 Conn. 594, 608, 609, 156 Atl. 52.

Further, the Wark Company contends that the cash received by the Hotel Corporation for the capital stock

which was subscribed and paid for by other persons, must be credited to the Wark Company in reduction of the balance due on its own subscription by reason of an agreement to that effect made with the Service Corporation at the time of its subscription. It cannot be denied that so far as other subscribers, the creditors of the Hotel Corporation and the general public, were concerned, this subscription by the Wark Company was a bona fide and unconditional subscription to the capital of the Hotel Corporation and the creditors were entitled to rely upon it as part of the capital assets of the Hotel Corporation held for the security of the credit they were extending to the corporation. "The capital stock is the fund depended upon for carrying on the business of the corporation and is the basis of its credit. Creditors assume that the corporate capital in money or money's worth, is equivalent to the capital stock, and that if that is not paid up, it is secured to be paid whenever necessary for payment of the liabilities of the corporation. Courts of equity, accordingly, hold subscribers liable to the full amount of their unpaid subscriptions, upon the insolvency of the corporation." 2 Purdy's Beach on Corporations, p. 883; *Cramer* v. *Burnham,* 107 Conn. 216, 221, 140 Atl. 477; *Butts* v. *King,* 101 Conn. 291, 301, 125 Atl. 654; *Davis* v. *Baptist Society,* 44 Conn. 582, 586; *Buck* v. *Ross,* 68 Conn. 29, 31, 35 Atl. 763; *Mann* v. *Cooke,* 20 Conn. 178, 187. If the cash paid in by the other subscribers was not only credited on their subscriptions but also upon that of the Wark Company, thus paying the balance of its subscription in full, it would have been *pro tanto* a payment of the Wark Company's subscription out of the capital assets of the Hotel Corporation, and if the balance of its subscription was thus paid, there would be but $95,130 capital actually paid in, although the outstanding

full-paid stock would be twenty-four hundred and eighty-one shares of preferred and the same number of shares of common stock, calling for capital assets of $260,505. Such an agreement by the corporations involved would have amounted to a fraud upon the creditors of the Hotel Corporation, and would not be binding upon the receiver who is here representing the corporate creditors. *Martin Tire & Rubber Co.* v. *Kelley Tire & Rubber Co.*, 101 Conn. 534, 539, 126 Atl. 697; High, Receivers (4th Ed.) pp. 386, 400; 1 Purdy's Beach on Corporations, pp. 316, 330, 530.

No changes which can properly be made in the finding or the decision of any of the subordinate claims made by the Wark Company upon this appeal, can affect the conclusions we have reached.

The memorandum of decision appearing in the record shows the unpaid amount due from the Wark Company on its subscription to be $165,375. The par value of the stock for which it subscribed was $183,750, and it paid in ten per cent, leaving that balance $165,375. The memorandum also finds the interest due to be $15,479.88. This shows the amount due the receiver to be $180,854.88, instead of $181,654.88 shown in the judgment-file. This clerical error is not made a ground of appeal, but will doubtless be corrected by the trial court. *Brown* v. *Clark*, 81 Conn. 562, 71 Atl. 727.

No valid grounds for the reversal of the judgment have been established.

There is no error.

In this opinion the other judges concurred.