## GEORGE J. BASSETT, BANK COMMISSIONER
### vs.
## CITY BANK AND TRUST COMPANY

Superior Court     Hartford County     File #42658

Present: Hon. JOHN A. CORNELL, Judge.

Charles J. McLaughlin,
Attorney General,     Attorney for the Plaintiff.

## MEMORANDUM FILED JANUARY 17, 1938.

CORNELL, J. The application is occasioned by an order of this court made August 16, 1932. The operative effect of this was to segregate certain assets of the receivership estate of an ascertained value of $14,018,209.42, "to be held for liquidation or other disposition by the Receiver for the sole and exclusive benefit" of the depositors in the Savings Department of defendant bank, "free from and discharged from any and all claims, rights or equities of all depositors in the Commercial Department" and creditors of defendant corporation and "from any and all rights and equities of redemption of defendant corporation or its stockholders." The order, also, provided: "that the depositors in the Savings Department . . ..

have no further claim against and no further right or interest in any other assets of defendant corporation in the custody of this court or against the defendant corporation". Other provisions were included, the effect of which was to relieve the Savings Department of any interest in a claim arising from the loan of funds of that department to other banks as to which such banks claimed a set-off; to cancel certain interdepartmental accounts between the Savings and the Commercial departments, and to relieve the Savings Department funds from appropriation for payment of any part of the receivership expenses incurred to July 30, 1932, which latter was fixed as the effective date of operation of the order. Other provisions of the order consistent with the dominant purpose of the latter need not be referred to here.

It is alleged that since that time the liquidation of the defendant's estate has proceeded in accordance therewith, the proceeds from that of the Savings Department being paid from time to time to the depositors therein and those of the Commercial Department to the depositors of the latter, with the result that the total dividends thus far distributed to the Savings Department depositors is 66% of the total of such deposits and that paid to the Commercial Department depositors aggregates 80% of the total of the latter.

It is further averred that there is a likelihood that if such method of distribution be adhered to, to the completion of liquidation of all of the defendant's assets, "there will result a situation in which the depositors of the Savings Department will receive a smaller percentage of their claims than will the depositors of the Commercial Department which your applicant believes was not contemplated at the time of the passage of the . . . order".

Aside from this general allegation that the effect of the order, viewed from experience in its actual operation is inequitable to the depositors of the Savings Department and results in a distribution contrary to statute, it is alleged that the order was the product of certain mistakes of fact which may be summarized as follows: (1) that it was predicated on an assumption "of the feasibility" of effecting a sale to or combination with some other bank or banks of the assets of the Commercial Department and (2) a transfer of the Savings Department assets to a liquidating corporation or a trust department of another bank corporation for liquidation—neither of which events were practicable and (3) the estimation of

the value of the contingent claim of savings department depositors against the general assets of the defendant corporation was erroneously computed upon an appraisal made at the outset of the receivership, whereas had it been predicated upon market values as of July 30, 1932, the estimated value of said claim would have been $236,127.79 in excess of that.

In view of the premise upon which the conclusions reached here, proceed, it will be unnecessary to discuss the subject matter of the third basis for a finding of mistake. In short, the determination, too, is that no such character of mistake as is required in equity to justify revocation or modification occurred. The testimony taken at the hearing following which the order was made, furnishes a definite portrayal of an unusually difficult situation with which the court was faced and a studied and radical effort to cope with it. In brief, and to generalize, it was evident that the liquidation of the assets of the defendant corporation under the financial and economic conditions which prevailed at the time, was prophetic, not only of delay in distribution of dividends to depositors in the Savings Department, particularly, but, while hazarding fair realization upon the assets, also threatened a demoralization of realty values beyond that already existing and the imperilment of the fortunes of thousands of property owners—to say nothing of other reasonably apprehensible distressful results.

It fully appears that this threatened crisis impelled leading members of the Bar and of finance as well as the then present, and a former State Bank Commissioner, to join with the receiver and his counsel in an endeavor to find a solution which would, to the greatest possible extent, tend to accomplish the dual purpose of (1) obviating, or at least, mitigating, the consequences adverted to supra and (2) assure to the depositors of both departments of the bank an ultimately greater security than would, otherwise, be the case. The plan, or hope (whichever it was) conceived (a) the sale, or more probably, the combining, of the Commercial Department with some other bank or banks and (b) the liquidation, over a period of years, of the assets of the Savings Department through the instrumentality of a corporation organized for that purpose or by the trust department of one of the local banks, but under conditions which would assure the income ad interim in such assets for the benefit of the savings depositors and a reasonable cost of administration.

The sine qua non of the success of such a plan, was, of

course, the complete separation of the two departments in such manner, in effect, that each would become a distinct entity with a definite identity of its own. This, in turn, meant the cutting off of the contingent right which the depositors in the Savings Department possessed, to share in a distribution of the proceeds of liquidation of the general corporate funds in event that the assets of the Savings Department proved insufficient to pay their claims in full. **General Statutes (1930) §§3908, 3935; Lippitt vs. Thames Loan & Trust Co., 88 Conn. 185, 190, 192, 193; Bassett vs. City Bank & Trust Company, 115 Conn. 1, 28; Perry vs. Commercial Bank & Trust Company, 119 Conn. 115, 124, 126.** The order makes such a segregation, and after providing for the adjustment of certain items not important to the present inquiry, provides, in effect that the depositors of neither department shall henceforth have any "right or interest in any other assets of defendant corporation in the custody of this court or against defendant corporation".

The terminology of this portion of the order which expresses the ultimate purpose, is, it is quite true, absolute and unconditional. Standing, alone, it would require the conclusion that the intent of the court was that the two departments be finally and for all purposes separated and the depositors in each, regardless of their rights under the statute as a result of liquidation in the ordinary course, be thereafter limited in opportunity of participation in future distributions, to the funds of that department in which they were depositors, subject to the adjustments made.

At least, two considerations, each of decisive character dispute this, however. The first is that the court cannot be presumed to have approved any plan of administering the defendant's bank assets which would conflict with the plain requirements of the statute. **City National Bank vs. Stoeckel, 103 Conn. 732, 742, 743; Shippee vs. Pallotti, Andretta & Co., Inc., 114 Conn. 658, 661, 662; Lippitt vs. Thames Loan & Trust Co., supra, pp. 189, 190; Raymond, Rec. vs. Gilman, 111 Conn. 605, 615.** Yet, to view it realistically, that it did so, would be an inescapable conclusion were it to be considered that the purpose was to decree that depositors in either department should be proscribed from participation in those funds which the statute directs they shall, in the mere liquidation of the bank's assets, if the order were absolute and unconditional.

The other reason why the order cannot be viewed as a seg-

regation of the departments applicable to liquidation in the usual course is evident from the terms of the order itself, if the application which occasioned it is considered. The former is, indeed, silent as concerns, and, alone gives no hint of, the occasion for the decree contained in it. The latter furnishes as the only reason for it, that "the bank cannot reopen or combine with other banks for the purposes of reopening and carry the Savings Department with it, and that the Savings Department must be separated or taken out of the structure of the City Bank & Trust Company before the receiver can either sell the Commercial Department or combine it with any other bank or banks". It must be held—especially in the absence of anything to the contrary appearing—that the order operated on the subject matter, only, of the application which occasioned it and did not exceed it in its operative effect. **Morgan vs. Danbury, 67 Conn. 484, 494, 495.**

That application submitted no definite proposal for a disposition of the receivership assets of one department or the other. It merely represented that none of either of the characters mentioned in it could be made of the Commercial Department without it was unlinked from the Savings Department. At the most, it contained but a hint that there was a hope or expectation that if the tie were sundered a sale or merger of the Commercial Department with some other bank might be accomplished and, for that reason prayed the court to unhook the leash that bound the two.

Whether, even so, the order was valid or invalid in its implications, it is thus manifest that it was not a judgment fixing finally and in all events the respective rights of the depositors to share in the liquidated assets of the defendant bank, but an order, provisional only, in its quality, scope and effect made to prepare the way for a possible forthcoming eventuality which has not to date materialized. At the most, it was a conditional judgment susceptible of being galvanized into operation if, while it was still in effect, the court authorized the sale to or combining of the Commercial Department with another bank. Failing that, it remained, as it still does, inert and conclusive of nothing. It is not a direction to the receiver to distribute the assets of the receivership estate in accordance with the separation of the departments described in it under the conditions which have existed and still do obtain. That was to be done only if the Commercial Department were sold or combined with another bank which latter action, itself, would re-

quire a further order of the court.

In the absence of such contingencies, at least, the court is bound by the provisions of the applicable statutes and has no power to authorize any other means of distributing the proceeds of the estate, upon liquidation, than is therein provided. **Shippee vs. Pallotti, Andretta & Co., Inc., 114 Conn. 658, 662; Raymond, Rec. vs. Gilman, 111 Conn. 605, 615.** Insofar as the rule outlined in the order in question has been applied in the payment of dividends to the depositors of the respective departments, and has resulted in either of these classes receiving more and the other less, than would have been the case if the assets of each had not been dealt with in accordance with the order, an inequality has resulted which must be corrected in the distribution of future dividends so that upon final liquidation each will have received that share which adherence to the statutory directions requires.

It is objected that the order in question is a final judgment, which not having been made the subject of appeal is now conclusive upon the rights of all persons effected by it. This may be so insofar as its appealability is concerned. But an order may be final in that an appeal will lie from it and yet, not "final as to the subject matter in litigation." 4 **C.J.S., p. 186, §94; Stolman vs. Boston Furniture Co., 120 Conn. 235, 241.** The appointment of a receiver, of course, signalized the taking of control by the court of the defendant's assets for the purpose of administering them and distributing their proceeds to those entitled to receive them. **Beach vs. Beach Hotel Corporation, 117 Conn. 445, 452.** This connotes the power to issue orders and give directions from time to time concerning these and kindred matters to the receiver who is merely the instrumentality through which the court makes its will effective. **Bergin vs. Robbins, 109 Conn. 329, 335.** Which, in turn, requires that the power reside in the court to modify or revoke its orders and decrees when these have a prospective operation concerning the distribution of dividends if by reason of error, changed conditions or otherwise, adherence to them would result in an inequitable or unlawful distribution and, where the occasion requires, to make such future orders as will remove the inequity of former orders, so that the final distribution shall be equitable and conform to statute. Such a power is inherent and indispensable and is not derogated from by the circumstances that any order made in the progress of administration is so final in its character and detrimental to

the interests of a party that he may appeal from it. However, that question is really not involved here. For the premise adopted is, that whatever the finality of the order in respect of its appealability or conclusiveness upon the rights of the parties, since it has never come into effect, such questions are academic only.

Similar considerations apply to the claim that depositors in the Savings Department are now estopped from attacking the order in question. On the construction of the order adopted here, there is, of course, no basis for the projection of such a contention, since if it has never become operative no one has been advantaged by it and no one has been led to change his position to his detriment in reliance on it. **MacKay vs. Aetna Life Ins. Co., 118 Conn. 538, 548.**

As will be clear from the discussion, supra, the order in question may be revoked or modified, upon application of the receiver and hearing thereon showing that permitting it to continue in effect is purposeless since the contingent event which it visualized cannot now be brought about.

Since, however, the instant application on the grounds it alleges affords no basis for the modification or revocation of the order, it must be denied. Its denial, however, is without effect upon the duty of the receiver in the premises which, in effect is to administer the estate in the same manner as though the order in question had never been made and to apply to the court for authority to make such adjustments in his accounts and otherwise, if any, as may be necessary to accomplish this purpose.